424 So.2d 106 (1982)
Amelia GOMEZ, Appellant,
v.
Jack Steinberg NECKWEAR, Appellee.
No. YY-423.
District Court of Appeal of Florida, First District.
December 22, 1982.
*107 Edward A. Sirkin, H. George Kagan, of Miller, Hodges & Kagan, Miami, for appellant.
Russell A. Ortmayer, of Marlow, Shofi, Ortmayer, Smith, Connell & Valerius, Miami, for appellee.
PER CURIAM.
In this workers' compensation litigation arising from a May 1977 industrial accident, claimant appeals from Deputy Commissioner Tomlinson's order recognizing claimant's ten percent permanent partial disability, and ordering appropriate benefits, but denying claimant additional benefits based on loss of wage earning capacity and impairment due to claimant's psychiatric difficulties.
The court by a decisive majority vote, and to maintain uniformity in the court's decisions, ordered that this case be determined en banc, Fla.R.App.P. 9.331(a), as requested by the three-judge panel originally assigned.
Upon considering the matter at some length, we conclude that this case presents an occasion for deference to the deputy's permissible findings and conclusions. The deputy's order recites and interprets the evidence, makes findings, and denies compensation for wage earning capacity loss upon evidence which we find adequate, and denies compensation for permanent psychiatric impairment on the ground those problems "do not arise out of the industrial accident" but were related only to a subsequent event, in this case her employer's denial of further employment when she reported back to work. That finding presents a close question of interpreting a physician's testimony. No doubt some of the judges now deciding this appeal, if we were instead deputy commissioners, would have viewed the evidence differently. But considering the deputy's decisive finding with a disposition to sustain it exactly as we would view a jury's verdict or a circuit judge's findings on contested facts and disputed inferences, we must affirm the deputy's decision as being a permissible view of the evidence.
This claimant had a long and complex history of various troubling ills. She was subject to depression long before her industrial accident in May 1971. When she fell and was hurt on the job, psychological ramifications were inevitable and did in fact occur at least temporarily. We are not here concerned with the workers' compensation benefits justly paid to her during the period of her convalescence, or with permanent disability benefits paid to her, and assessed by the deputy, for her residual physical disability at the time of maximum medical improvement in March 1979. When she reported back to work in November 1977, some time before the undisputed maximum medical improvement date, Dr. Casademont, claimant's psychiatric physician, described her address to life and work in this way:
I think that ... in spite of all the problems she was still motivated and had returned to work, to Jack Steinberg, and I said, yes, this is exactly what happened. That in spite of all these problems she continued to try to lead an active or productive type of life.
....
She tried to go back to work. I mean, you see, the same pattern. Again, maybe she was not feeling well, but she did try to go back one more time.
*108 What claimant found, when she returned to work, was that her job was no longer available. In claimant's words, her employer told her "I don't want you here anymore." This event, Dr. Casademont concluded, was the critical factor (in what he called the "accident"), which accounted for that part of her permanent partial psychiatric disability not attributed to her predisposing conditions. In March 1980 she found both the opportunity and the will to return to gainful employment elsewhere.
Given the complexity of this human experience, and the variety of medical testimony in the record, it is no doubt possible to remodel the deputy's description of causal events in various ways. One might say that claimant's distress over the firing incident extended and aggravated or prevented her recovery from psychological conditions related to the compensable accident. One might say that her reactions to loss of employment and to her injury were concurrent causes of her rated permanent psychiatric disability.
The difficulty with those divergent interpretations of the record, and with others that might be imagined by some combination of three judges of a twelve-judge court, is that the deputy viewed the facts somewhat differently. Weighing all the complex and necessarily abstract medical opinion in the light of his complete familiarity with the claimant and her case, gained over the course of several hearings, the deputy found as a fact that
the psychiatric problems of the claimant do not arise out of the industrial accident, but were related only to the loss of her employment.
If the deputy's finding is sustained, claimant's depression is not compensable, since that finding necessarily rests on a determination that her industrial injury was not a direct or indirect cause of her loss of employment (conceded by counsel on this record) or the ensuing permanent psychiatric impairment. Chapter 440 encourages but does not require an employer to keep open a job for a returning worker, and it does not monitor the employer's reasons for giving the job to another or declaring it surplus. If the law did have that effect, claimant's jobless condition in such circumstances as these would automatically be compensable regardless of other available work. An employer's decision not to rehire does not necessarily become a compensable event, as a matter of law, because the former employee is wracked with disappointment.
So the deputy's assessment of the evidence as a whole, including Dr. Casademont's testimony, was a permissible one, whether or not we would have made such an assessment in his position. This is the kind of winnowing decision, applying law to facts, that circuit court judges and juries make every day; it is the kind of decision, from those sources, that appellate courts routinely and steadfastly refuse to disturb. In the same way, then, the findings and conclusions of deputy commissioners command our respect, and when we withhold that due deference we only unsettle the compensation system and invite retrials of compensation claims in this court. We therefore reaffirm that the deputy's findings will be sustained if that is permitted by any view of the evidence and its permissible inferences; that, as we said in Poinciana Village Construction Corp. v. Gallarano, 421 So.2d 621 (Fla. 1st DCA 1982), the deputy is "the trier of facts and the judge of their significance both first and foremost," and the deputy's decisions falling "within that range of reasonable analysis" will be sustained.
The deputy's order is therefore AFFIRMED.
ROBERT P. SMITH, Jr., C.J., and McCORD, ERVIN, SHIVERS, WENTWORTH, JOANOS, THOMPSON and WIGGINTON, JJ., concur.
SHAW, J., dissents with opinion in which BOOTH and LARRY G. SMITH, JJ., concur.
MILLS, J., dissents with opinion in which BOOTH, J., concurs.
BOOTH, J., dissents with opinion.
*109 SHAW, Judge, dissenting.
In this workers' compensation case, the claimant appeals the deputy's findings that claimant's psychiatric problems were not caused by her compensable accident and that she did not suffer a loss of wage earning capacity greater than 10% physical impairment. I would reverse and remand with directions.
On 16 May 1977, claimant suffered injuries to her left ankle, right leg, right wrist and hand, right rib cage, and dorsal spine when she slipped and fell on the employer's premises. Prior to her fall she had been continuously able to hold a job, had worked approximately five years for the employer, and had a history of preexisting psychiatric problems which were symptomatic but not disabling. Subsequent to her industrial injury, her attending physician, Dr. Barrios, reported that non-organic factors were playing a role in her symptoms and recommended psychiatric evaluation. During hospitalization in September of 1977, a psychiatric consultant, Dr. Escoto, recommended psychotherapy for acute depression. This recommendation was reiterated in October, but claimant continued to decline psychotherapy. On 3 November 1977, Dr. Barrios recommended that she return to work. However, when she attempted to return to her former employment on 7 November 1977, she was informed that her services were no longer desired. In February of 1978 claimant consulted a psychiatrist, Dr. Casademont, for treatment of her emotional problems. This treatment was authorized by the carrier and continued through 19 March 1980, at which time Dr. Casademont opined that claimant had reached maximum medical improvement with a psychiatric disability of the body as a whole in the range of 30-35%, only 25-30% of which the doctor attributed to the accident.
In his order finding that claimant's psychiatric problems did not arise out of her industrial accident, the deputy relied upon the testimony of Dr. Casademont, and concluded that claimant's psychiatric problems were triggered by her former employer's refusal to rehire her and did not arise out of the industrial accident.[1] The employer/carrier urge on appeal that Dr. Casademont's characterization of the firing establishes it as having independently caused claimant's psychiatric problems, and furnishes competent substantial evidence supportive of the deputy's finding.
The deputy's findings are presumed to be correct, and our appellate function is to determine whether the findings are supported by competent substantial evidence. Howard v. Green's Tractor Co., 290 So.2d 46 (Fla. 1973). In my view, the finding that no psychiatric impairment is attributable to the accident is not so supported. Doctors Barrios and Escoto opined prior to the firing that the claimant suffered from psychiatric problems following the industrial accident. Their opinions are consistent with that of Dr. Casademont who testified in response to a question from the deputy that the claimant's psychiatric care and therapy "was related to the accident with manifestations that began to appear after the accident, and after the treatment that she received for the accident." I find it difficult to reconcile this language with the deputy's conclusion that no part of the claimant's *110 psychiatric problems arose out of the industrial accident, and that her psychiatric condition stems solely from her loss of employment. Although the doctor's language is subject to varying interpretations, I believe a fair reading of his testimony is that the firing did not cause the claimant's existing psychiatric problems, 25-30% of which the doctor recognized as stemming from the industrial accident, but merely furnished an occasion for their manifestation. An inability to return to previous employment is a foreseeable consequence of the occurrence of an injury which interrupts the claimant's employment. Where, as in this instance, the employer refuses to rehire the employee, I regard the failure to rehire not as a compensable event in itself, but simply as a fortuitous circumstance that may unfortunately befall a claimant, and thus impede the claimant's attempt to return to a productive work status. Where the accident, the resulting disability, and the refusal to reemploy are all interrelated, I do not view the failure to reemploy the claimant as a subsequent intervening cause that would bring into play the doctrine of reverse merger adopted by this Court in Pan American World Airways, Inc. v. Franchina, 396 So.2d 245 (Fla. 1st DCA 1981). Dr. Casademont treated the claimant for depression, anxiety, phobias, and hysteria that sometimes lasted for several days. He testified that the firing was part of the dynamics of the claimant's depression.[2] I find the appellant's psychiatric impairment compensable and accordingly would reverse and remand with directions to award the claimant additional permanent disability for psychiatric impairment.
Claimant's second point on appeal urges that the deputy erred in finding that she did not suffer a loss of earning capacity greater than the 10% physical impairment. The applicable law, section 440.15(3)(u), Florida Statutes (1977), provides that permanent partial disability may be measured as either physical impairment or diminution of wage earning capacity, whichever is greater. The deputy's award of permanent partial disability for a 10% disability of the body as a whole is supported by the testimony of Dr. Mims, an orthopedic surgeon, who also placed restrictions on claimant's physical activities. I see no abuse of discretion on the deputy's part in determining that the 10% physical impairment is greater than the loss of earning capacity created by the restrictions. However, the deputy's determination on this point is affected by our disposition of point one above. Accordingly, I would remand for reconsideration, but in passing caution against placing undue emphasis on the fact that the claimant is earning more money at her current employment than she was earning at the time of her industrial injury. See Guzman v. Surge Electric, Inc., 381 So.2d 287 (Fla. 1st DCA 1980). Moreover, the deputy should consider whether the claimant's current employment falls within the "odd-lot" doctrine *111 recently enunciated in Lister v. Walker, 409 So.2d 1153 (Fla. 1st DCA 1982).
BOOTH and LARRY G. SMITH, JJ., concur.
MILLS, Judge, dissenting:
It was suggested by one of my colleagues that this dissent was inappropriate. I do not agree. It follows.
Although it is my opinion that the deputy's order is supported by competent substantial evidence, I am compelled to dissent for the following reasons.
This case was decided initially by a panel of three Judges which ruled on the issues raised by Gomez and then gratuitously receded from this Court's prior decisions in Pan American World Airways, Inc. v. Franchina, 396 So.2d 245 (Fla. 1st DCA 1981), and Glades County Sugar Growers v. Gonzales, 388 So.2d 333 (Fla. 1st DCA 1980), which adopted the "no reverse merger rule." The writer of the opinion requested en banc consideration because of this conflict.
After initial en banc consideration, the majority of the Court favored adherence to the Pan American and Glades cases but favored reversal of the deputy's order. After the initial en banc opinion was written, a doubtful majority supported it.
Because of the questionable majority, the case was considered en banc again. On this occasion, the majority of the Court agreed to affirm the deputy's order but refused to recede from the Pan American and Glades cases. The majority agreed that the en banc opinion should affirm the deputy's order but should not mention the en banc issue because it was not raised as an issue before the deputy or this Court.
This appeal became an en banc proceeding because the panel to which it was assigned desired to recede from this Court's Pan American and Glades case, supra. A majority of the Judges agreed, however, that the reverse merger issue, which brought about the en banc proceeding, was not before the Court because it was not an issue before the deputy or this Court.
In my judgment, when this conclusion was reached, this matter was no longer subject to en banc consideration. The original opinion of the panel should stand because upon removal of the en banc issue from the opinion, there is no conflict. The Judges on the initial panel agreed that they should not have receded from the Pan American and Glades cases because the "no reverse merger doctrine" was not an issue in this case.
A cursory reading of the majority opinion will reflect that it does not state what the "apparent conflict" was that brought about an en banc consideration, nor does it cite prior cases of this Court which raise conflict, nor does it state that it resolves a conflict. Why doesn't it? Because there was and is no conflict.
For these reasons, I would reinstate the panel's original opinion, absent the suggestion that the panel receded from the Pan American and Glades cases, supra.
BOOTH, J., concurs.
BOOTH, Judge, dissenting:
I concur in the dissenting opinion of Judge Mills, that the necessary predicate for en banc consideration is lacking. (See, Schreiber v. Chase Federal Savings & Loan Association, 422 So.2d 911, 1982, opinions of Chief Judge Hubbart and Judge Nesbitt, stating majority view of our sister court on predicate for en banc consideration). On the merits of the controversy as considered en banc, I concur in the dissenting opinion of Judge Shaw.
NOTES
[1] The deputy found as follows:

5. This claimant has had extensive psychiatric treatment and examinations. Her treatment by Dr. Carlos Casademonte was authorized by and is the responsibility of the employer. Dr. Casademonte testified in detail on this case. He implicated her pre-existing hepatitis and expressed the opinion that this claimant has an extremely dependent personality, which pre-existed her accident. Dr. Casademonte testified that the triggering mechanism for the depressive anxiety problems the claimant had was her attempt to return to work shortly after her injury and being told by her employer that there was no job for her because of her back condition. It appears this was a shock to her ego and triggered her psychiatric problems, and not the industrial accident. Considering all the pre-existing conditions and the triggering mechanism testified to by Dr. Casademonte, I find that the psychiatric problems of the claimant do not arise out of the industrial accident, but were related only to the loss of her employment.
Record on Appeal, Vol. III, at 535-536.
[2] All of these things are part of the dynamics of the depression that this patient presently has?
A. Right.
Q. Are there any other factors that should be considered other than what we have discussed?
Of course, we have the 1978 auto accident which I gather was rather minor.
A. It was minor. It was nothing too much.
Other things, I don't know if we have fully discussed them or talked about it, has been the fact that she lost a job that she has had for several years in which she was feeling wanted. At least she felt that she was functioning and doing things all right.
It was very close to where she lives, so there was no problem with transportation. The hours were convenient for her, and she had self-esteem that comes not only with the fact she was earning some money on her own, but also the fact she was doing something useful, and was gainfully employed, and she lost that.
Q. Is there any element 
THE DEPUTY COMMISSIONER: Off the record.
(Thereupon, a discussion was held off the record.)
THE DEPUTY COMMISSIONER: Back on the record.
Q. (By Mr. Ortmayer) Doctor, is there any element of secondary pain in this patient, malingering or anything?
A. I do not feel she's malingering.
Record on Appeal, Vol. I, at 137-138.