560 So.2d 377 (1990)
Christine BATKA, Appellant,
v.
DUFF'S SMORGASBORD and Fireman's Fund, Appellees.
No. 88-2887.
District Court of Appeal of Florida, First District.
April 27, 1990.
*378 Mark A. Zimmerman of Zimmerman, Paul & Bauer, DeLand, for appellant.
James A. Young of Haas, Boehm, Brown, Ridgon, Seacrest & Fischer, P.A., Tampa, for appellees.
NIMMONS, Judge.
In this workers' compensation appeal, claimant seeks review of a final order denying her claim for benefits and deauthorizing continued orthopedic care and treatment. The principal contention made by claimant on appeal  and the only one we feel constrained to discuss  is that the judge erred in accepting Dr. Seltzer's opinion that the claimant suffered no impairment as a result of the subject accident. We affirm.
The claimant sustained an injury at work on August 20, 1985 when she slipped on a wet floor and fell, injuring her head, ankle, neck, shoulders and back. She received orthopedic care and treatment from Dr. Davis, an orthopedic specialist and claimant's authorized treating physician, from February 1986 through May 1988. Dr. Davis opined that claimant's fall had caused her to have symptomatology and pain in her thoracic spine. Dr. Davis took x-ray films of the thoracic spine in February 1986. According to Dr. Davis, these films demonstrated that there were degenerative changes and abnormalities in the area of the back where the claimant was complaining of her pain. Subsequent x-ray films were taken by Dr. Davis in April 1988. Dr. Davis interpreted these films as showing a spontaneous fusion process which had progressed and changed since the time the February 1986 x-ray films were taken. Dr. Davis felt it was very possible that the degenerative changes and fusion process first noted in February 1986 were caused by the industrial accident.
Alternatively, considering the claimant's history of no previous symptomatology or injury to her thoracic spine area, Dr. Davis felt that the trauma of the industrial accident aggravated a pre-existing condition, thereby causing the pain and symptomatology from which the claimant was suffering. Dr. Davis was of the opinion that the spontaneous fusion and degenerative changes would continue to progress and that while the progression continued, the claimant would continue to suffer from extreme pain. He felt the spontaneous fusion process would take at least five years to complete and recommended surgery for the purpose of surgically completing the fusion process and stabilizing the thoracic spine in the area where the ongoing spontaneous fusion process was occurring. Dr. Davis also felt that the claimant was unable to work as a result of the symptomatology resulting from the industrial accident.
Dr. Seltzer, an orthopedic specialist, conducted an independent medical evaluation of claimant on June 9, 1988. Dr. Seltzer testified that he reviewed the patient's medical history and the x-ray films taken by Dr. Davis in February 1986 and April 1988. Dr. Seltzer testified that both sets of x-rays revealed spontaneous anterior fusion at the T-10, 11 level with degenerative changes. It was Dr. Seltzer's opinion that this condition predated the August 1985 accident. Based upon his experience, he did not believe such fusion and changes could have occurred in the six-month interval between the date of the accident (August 20, 1985) and the February 1986 x-rays. Furthermore, Dr. Seltzer opined that the fusion mass was mature in nature and not progressing and that "it's going to stay just as it is."
Moreover, Dr. Seltzer was of the view that claimant subjectively manifested symptomatology that was in excess of what clinical findings would support. A pertinent excerpt from Dr. Seltzer's testimony is as follows:

*379 Q When you say inappropriate, do you mean that she did not truly feel any pain, or do you mean that you did not expect the response?
A I indicated that it was inappropriate in that when I'm examining somebody's back, and I do no more than touch the skin in the fashion as I am demonstrating at this point, it should not elicit a pain response where the patient would arch their back, moan and grimace in pain, which was the type of response that I got from this individual.
Q Was that the reason you were pinching her skin, for the purpose of determining whether an inappropriate response would follow, or was there some other reason that you were doing that?
A The reason I did it was because part of my normal routine is to examine the back area. As I do so, I will palpate the back. As I began to do so and touched the patient, she indicated that was a source of discomfort for her, with me doing no more than this type of motion. So at that point I stopped, and I said, as I'm demonstrating with the pinching maneuver, is this also causing pain for you, and I got the same type of response. I felt that was inappropriate.
Dr. Seltzer concluded that claimant had suffered a musculoligamentus strain of the cervical, dorsal and lumbosacral spine. He felt she had reached maximum medical improvement, and further concluded there was no evidence of impairment related to the 1985 industrial accident. Dr. Seltzer specifically stated he could not appreciate any specific orthopedic abnormality which would preclude the patient from returning to work without restrictions or which would require further treatment.
At the hearing before the judge of compensation claims on September 22, 1988, the claimant sought TTD, TPD, and/or wage loss benefits from May 1988 through the date of the hearing and continuing. She also sought continued care and treatment with Dr. Davis, authorization for surgery recommended by Dr. Davis, and attorney's fees and costs. The judge accepted Dr. Seltzer's opinion that claimant had reached maximum medical improvement with no impairment, rejected Dr. Davis' opinions, and determined that the claimant's thoracic condition and symptomatology were unrelated to the industrial accident. The judge denied appellant's claim for benefits, deauthorized continued medical care and treatment by Dr. Davis, and denied appellant's claim for attorney's fees and costs.
Claimant's main contention on this appeal is that the judge below erroneously accepted the opinion of Dr. Seltzer, the orthopedist who conducted an independent medical examination of the claimant, over the opinion of Dr. Davis, claimant's treating physician. Claimant asserts that the judge should not have relied on Dr. Seltzer's testimony because such testimony was incompetent. According to the claimant, Dr. Seltzer took no x-rays himself and made no comparison of the x-ray films taken by Dr. Davis to determine if there were any changes in the fusion mass. Dr. Seltzer indicated on cross-examination that if the fusion had continued to develop, pain could possibly be associated with the condition and future care in such a situation would be a consideration. Claimant further asserts that Dr. Seltzer failed to properly consider whether or not the industrial accident aggravated the claimant's pre-existing condition.
It is exclusively within the judge's province to evaluate the credibility of witnesses, resolve conflicts in the testimony, and weigh the evidence in workers' compensation cases. Sun Insurance Company v. Boyd, 101 So.2d 419 (Fla. 1st DCA 1958). In so doing, a judge may accept the testimony of one physician over that of others. Jefferson Stores, Inc. v. Rosenfeld, 386 So.2d 865 (Fla. 1st DCA 1980); Reynolds v. Neisner Brothers, Inc., 436 So.2d 1070 (Fla. 1st DCA 1983). Whether this court may have believed witnesses expressing a contrary view, or may have embraced a contrary interpretation of the evidence, is irrelevant. Crowell v. Messana Contractors, 180 So.2d 329 (Fla. 1965); Richardson v. City of Tampa, 175 So.2d 43 (Fla. 1965). The reviewing court is not permitted *380 to second guess the judge of compensation claims so long as there is competent substantial evidence in the record to support his findings. Rinker Materials Corp. v. Hill, 471 So.2d 119 (Fla. 1st DCA 1985).
Contrary to the claimant's assertions on this appeal, Dr. Seltzer's testimony constituted competent substantial evidence sufficient to support the judge's denial of benefits. It was Dr. Seltzer's opinion that claimant had suffered no impairment as a result of the industrial accident. Dr. Seltzer based his opinion, in part, on his review of claimant's medical history. Dr. Seltzer reviewed both sets of x-rays taken by Dr. Davis in February 1986 and April 1988. Dr. Seltzer concluded that the fusion he found in both x-rays predated the August 1985 accident. He also testified that the fusion was mature and not progressing.
In view of Dr. Seltzer's testimony that the fusion mass was mature, the fact that he could not recall "comparing" the two x-rays taken by Dr. Davis could be viewed by the trier of fact as insignificant.[1] Likewise, the trier of fact was entitled to view as insignificant Dr. Seltzer's hypothetical testimony that if a fusion had continued to develop, pain could possibly be associated with the condition and future care would be a consideration.
Moreover, contrary to claimant's assertion, Dr. Seltzer did in fact consider whether the industrial accident aggravated claimant's pre-existing condition:
My clinical impression was that the fusion was something that was there prior to this woman falling. I did not feel that the fall itself had significantly changed this anatomical entity.
* * * * * *
I don't feel that the fall, itself, aggravated [the fusion] to that degree that it made it as symptomatic as [claimant] indicated.
Dr. Seltzer also based his opinion on his physical examination of the claimant. Dr. Seltzer found that claimant's symptomatology was in excess of what the clinical findings would support. This finding was consistent with the judge's own personal observation of the claimant at the hearing below. The judge specifically found that claimant did not appear to have any difficulty in movement nor did she appear to be in pain.
The judge's order denying appellant's claim for TTD, TPD and/or wage-loss benefits, and continued orthopedic care and treatment, is supported by competent substantial evidence. We have examined the remaining issues raised by appellant and find them to be without merit.
AFFIRMED.
WENTWORTH and ZEHMER, JJ., concur.
NOTES
[1] The judge mistakenly acknowledged that Dr. Seltzer had testified that he did not see any change in the fusion between the February 1986 and April 1988 x-rays. Rather, Dr. Seltzer testified that he did not recall comparing these two sets of x-rays to determine if there had been any changes. The judge's misstatement is insignificant, however, since the judge relied on other portions of Dr. Seltzer's testimony which were competent; a judge's findings are to be sustained if permitted by any view of the evidence and its permissible inferences. Gomez v. Neckwear, 424 So.2d 106 (Fla. 1st DCA 1982).