WOLF, Judge.
Claimant challenges an order denying her permanent disability benefits, entered on the ground that claimant reached maximum medical improvement with no permanent impairment. We find there was competent substantial evidence to support the findings of the judge of compensation claims (JCC), and affirm.
The issue in this case focuses on the conflicting medical evidence concerning claimant’s permanent impairment. The JCC made extensive findings concerning the claimant’s injury and the relative credibility and weight to be given each doctor’s testimony. In light of the importance of these findings, it is essential that they be repeated in full. The JCC found as follows:
b.The claimant, ROBIN COLLINS, was injured when a large box fell onto her chest and pinned her in the chair. She has been seen and treated primarily by Andrew F. Greene, M.D., an orthopedic surgeon. Her current physical complaints are pulling and tightness in the right neck and right shoulder blade, earache, the appearance of a lump at the right neck, and discomfort in the right side of the chest. She is currently employed as a food server at a McDonald’s Restaurant where she works four hours a day, three days per week. Additionally, she has been working at a bakery since April of 1990, four to five hours a day, two days per week.
c. Four physicians testified in this cause. Dr. Andrew F. Greene, the claimant’s treating orthopedic surgeon, testified that he first saw the claimant for the industrial accident of September 26, 1987, on October 8, 1987. He found that the claimant had reached maximum medical improvement on March 29, 1989, with no permanent impairment based on any logical scheme that he was aware of. Specifically, Dr. Greene felt the claimant had no permanency per the AMA Guides to Impairment and no permanency per the Manual for Orthopedic Surgeons in Evaluation of Permanent Physical Impairment. Additionally, based upon his educational background, experience and training, she had no impairment. Dr. Greene testified the claimant could return to work without physical restrictions. For reasons more fully set out below, I accept the opinion of Dr. Greene and find that the claimant reached maximum medical improvement with no permanent impairment prior to February 18, 1990. Specifically, I find that the claimant reached MMI on March 29, 1989.
d. Leonard E. Greenbaum, a chiropractor and a registered physical therapist, testified on behalf of the claimant. He had performed a functional capacities evaluation of the claimant on July 21, 1988, approximately ten months post date of the accident. At that point the claimant was still undergoing treatment. Dr. Greenbaum testified that at that point he did not know whether the claimant has sustained any permanency nor whether any could be reasonably expected. Dr. Greenbaum readily admitted that with respect to whether the claimant had a permanency or not, he would have to defer to the treating orthopedic physician. As he stated, his job was to find out what the claimant’s functional capacity was and that was what his evaluation was geared toward. I find that Dr. Greenbaum’s testimony is not competent substantial evidence of a permanent impairment. He saw the claimant on only one occasion, approximately eight months before Dr. Greene made his determination regarding maximum medical *329 improvement and permanency. The visit was for a limited purpose. I do not find Dr. Greenbaum’s testimony to be inconsistent with Dr. Greene’s ultimate finding of no permanency and no work restrictions.
e. Hooshang Hooshmand, a neurologist, testified on behalf of the claimant. Dr. Hooshmand is an unauthorized physician who rated the claimant with a 5% total body impairment and imposed work restrictions. According to Dr. Hooshmand, the rating was arrived at based upon EMG, neurological exam, and thermogra-phy.
f. I am skeptical of the opinion of Dr. Hooshmand for several reasons. He failed to explain how he arrived at the particular 5% as the impairment rating. He conceded that during his treatment of the claimant he never had any records concerning her from any other prior treating physicians and in particular he never reviewed any records from Dr. Greene, the treating orthopedic surgeon. He admitted that all he had was bottles of medications brought by the claimant and the history she gave to him. He appeared to be unconcerned with the pri- or treatment she had been provided. Dr. Hooshmand appeared to me to be more an advocate for the claimant than an objective, unbiased witness. I found the overall tenor of his testimony to be an attack on Dr. Greene and an extollment of his own virtues. I found this to be inappropriate. Dr. Hooshmand was hostile and argumentative as well as generally non-responsive to cross examination questions by counsel for the employer/carrier. I do not accept Dr. Hoosh-mand’s testimony as constituting competent substantial evidence of permanent impairment. I find he failed to give a cogent and well reasoned explanation for the 5% rating.
g. Leonard M. Holtzman, D.C., saw the claimant at her request on June 5, 1990. He opined that the claimant had reached MMI under chiropractic and physical therapy. He saw no objective evidence of improvement following extensive care to date and opined that it was doubtful that additional care by himself or any other chiropractor would bring about further resolution of her complaints. He assigned the claimant a 5% impairment rating based upon diagnosed chronic myofascial pain syndrome.
h. Dr. Holtzman agreed that his objective findings in comparison to Ms. Collins’ subjective complaints were not in proportion to one another and he found the two to be inconsistent. According to Dr. Holtzman, if he had seen the claimant as a new patient, someone who had just come in, someone who had just originally had the injury, he would have been surprised that she had the severity of the complaints that she was attributing to the accident. I find it significant that Dr. Holtzman did not assign any work restrictions to the claimant. He testified that the claimant has a soft tissue type injury which he did not personally believe would be worsened by different activities. He could find no specific limitation which he would assign due to the objective findings on his examination.
i. I do not find Dr. Holtzman’s testimony to be competent substantial evidence of a permanent impairment. This is based upon the inconsistency between the severe subjective complaints voiced by the claimant at the time of his examination and the scarcity of the objective findings. My finding is also based upon Dr. Holtzman’s failure to find any specific limitation which he would assign due to the objective findings on examination.
j. During his care and treatment of the claimant, Dr. Greene could never find any objective basis for the claimant’s subjective complaints. He found the claimant to have reached maximum medical improvement on March 29, 1989, and at that point with reference to her subjective complaints, stated, “it seems as though her symptoms are going to go on without any end in sight, and I see no reason to prolong treatment in this office.” Dr. Greene felt the claimant was employable as of March 29, 1989, with certain work restrictions imposed based only upon her subjective complaints. *330 Specifically, he did not feel she should have a job where she was required to look overhead and he did not think heavy lifting was appropriate. With respect to the physical capacities form dated March 29, 1989, Dr. Greene testified that he found the forms to be burdensome and they were therefore completed by having his secretary sit down with the patient and put down anything the patient wanted. Dr. Greene found the form to be of no use to him but viewed them as a requirement of the workers’ compensation system. The data on the form dated March 29, 1989, came 100% from the claimant. Dr. Greene opined that the claimant had no orthopedic diagnosis that he could make and that she had no permanency. With respect to the work restrictions imposed on March 29, 1989, Dr. Greene did not expect them to be permanent. As of October 2, 1989, he felt the claimant could return to any work available to her without restrictions. Dr. Greene found no basis upon which he could sensibly propose that the restrictions he initially imposed be enforced forever.
k. In accepting Dr. Greene’s opinion that the claimant reached maximum medical improvement with no permanent impairment and that she could return to work without any restrictions to any job available to her, I found his opinion on the claimant’s credibility to be helpful. According to Dr. Greene, the claimant’s complaints initially seemed consistent with having a heavy weight fall on one’s chest, knocking one back in a chair. The fact that they went on so long, despite treatment and without any objective findings coming to the fore, caused him to find the complaints to be less credible with time. I do not find it to be inconsistent that Dr. Greene prescribed medications as treatment for the claimant’s subjective complaints in that I believe as he stated, he was trying to help her in any way he could. I am satisfied that having been the primary treating physician for the claimant following her on the job injury, that Dr. Greene was the most qualified physician to address the issue of whether the claimant sustained a permanency as a result of that injury and that his testimony constituted the competent substantial evidence that in fact the claimant did not sustain any permanency. The AMA Guides are but one tool the treating physician has at his disposal in arriving at an opinion with respect to permanent impairment. I am satisfied that Dr. Greene was justified in relying upon his education, experience, background, and training to determine that the claimant had no permanent injury resulting from the accident of September 26, 1987. Based upon the foregoing, I accept Dr. Greene’s opinion over that of the other physicians who testified in this cause. Dr. Greene is known to me and I find him to be a highly qualified orthopedic surgeon.
We find that each of these findings are supported by the record.
The dissent concludes that we should perform a de novo review by evaluating the credibility of witnesses, resolving conflicts, and reweighing the evidence. That is not the job of the appellate court. Batka v. Duffs Smorgasbord, 560 So.2d 377 (Fla. 1st DCA 1990). We, thus, decline to enter into a lengthy discussion of the relative credibility of the medical testimony.[1]
The detailed reasoning of the JCC, including familiarity with the doctor and the subject matter in the instant case, demonstrates the reason that the appellate court should not attempt to interfere with the discretion granted to the JCC to make factual and credibility determinations. The rule is well established that a judge of compensation claims has the discretion to accept the testimony of one physician over that of others, Batka v. Duffs Smorgasbord, supra, and that the judge’s discretion *331 in such regard should not be disturbed on appeal unless the testimony in support thereof fails to meet the test of substantial evidence. Griffith v. McDonalds, 526 So.2d 1032 (Fla. 1st DCA 1988). Moreover, the judge’s findings are to be affirmed if permitted by any view of the evidence and its permissible inferences. Gomez v. Neckwear, 424 So.2d 106 (Fla. 1st DCA 1982) (en banc). In that we find competent, substantial evidence in support of the order, it is
AFFIRMED.
WIGGINGTON, J., concurs.
ERVIN, J., dissenting with written opinion.

. It should be noted, however, that the dissent apparently questions the competency of Dr. Greene’s opinion based on the fact that Dr. Greene continued to prescribe medication and impose restrictions after the date of MMI. A full reading of Dr. Greene's testimony indicates that these measures were prescribed as a result of an accommodation to the claimant rather than based upon any identifiable medical im- „ pairment.