637 So.2d 304 (1994)
Leon BASS, Appellant,
v.
GENERAL MOTORS CORPORATION, Appellee.
No. 92-1197.
District Court of Appeal of Florida, First District.
May 18, 1994.
*305 Neal L. Betancourt of Rotchford & Betancourt, P.A., Jacksonville, for appellant.
Mary Bland Love of Gobelman and Love, Jacksonville, for appellee.
SMITH, Judge.
Appellant, the claimant below, challenges an order denying his claim for temporary, total disability (TTD) and/or temporary, partial disability (TPD) benefits, medical treatment, penalties, interest, attorney's fees and costs. We reverse.
Claimant was employed in a General Motors parts department when he claimed to have injured his lower back in October 1990 while lifting a part. He was treated for lumbar strain and was released for full-duty work approximately one month later. In May 1991, claimant experienced a sudden onset of back pain while at work. Eventually, back surgery was required and a claim was made for TTD and other benefits. The pain experienced in May was attributed by claimant to the October 1990 lifting injury. Appellee, the employer, defended the claim on the ground that claimant did not suffer an accident or work-related injury; the employer also argued that claimant had failed to timely notify the employer and had failed to produce credible medical evidence to establish entitlement to disability benefits.
The JCC denied the claim on the ground that claimant's testimony as to how the injury occurred was "incredible." Because the JCC found claimant's description of how the injury occurred lacked credibility, the JCC disregarded the testimony of two medical experts who had relied upon claimant's version of events. The JCC found significance in the fact that on the day of the accident, claimant claimed to have been lifting a box containing a "support" when he injured his back. The next day, claimant allegedly told his supervisor and the worker's compensation clerk that he was injured while lifting a box containing a "door panel." Claimant also claimed to have been lifting a door panel on his accident report and during deposition. The JCC noted that at the hearing, claimant claimed to have lifted a support, and this assertion was made after appellee produced documentation indicating the item lifted was a support.
The discrepancy as to the part carried by claimant was significant to the appellee's defense because GM parts are boxed differently and therefore require different methods of lifting. At the hearing, claimant demonstrated how he lifted the box: hands inserted in two cut-outs on the same side, palm up. The JCC observed that this lifting technique could not have been employed  if a support was lifted, as was later claimed by claimant  because this part was boxed with the hand *306 cut-outs placed at opposite ends. The JCC noted that claimant's supervisor, Tom Dice, testified that claimant demonstrated his lifting technique shortly after the accident, and in this demonstration, claimant's hands "were positioned in a curled fashion around the top of the box at opposite ends of it."
The JCC further recounted the apparent discrepancy between claimant's testimony regarding the filing of the accident report and that of claimant's supervisor, Tom Dice, and the worker's compensation clerk, Diane Gaspar. Claimant testified that he filed an accident report immediately after the accident whereas the testimony of others indicated that the report was not filed until the day after the lifting incident. As noted, the JCC rejected the claim upon the finding that the lifting activities alleged by claimant were "not supported by the record." We hold that the JCC erred in making this finding of fact.
When asked whether GM parts are stored in boxes with hand cut-outs only on one side, Dice testified:
I  no, I don't know, there may be. I  I can't recall of any right off. Normally these type of things are just one on each side and you just  if you had them on the same side, it'd be kind of hard to  maybe some of them's got four, you know, two on each side. But I don't think you'd pick them up on the same side.
Furthermore, Dice admitted during cross-examination that it was possible that door panels were shipped in boxes similar to those containing supports at the time of appellant's accident. In fact, Dice testified that "they [GM, that is] constantly change their cartons out there, the packaging all the time." Dice testified as well that he had no reason to believe appellant was, so to speak, "faking" an injury.
Claimant testified that on October 22, after injuring his back, he looked for his supervisor, Dice, in order to notify him about the accident. A notice of injury, dated October 24th and executed by Dice, reported that the injury occurred on Oct. 22, 1990. Dice could not remember whether claimant was asked to demonstrate, when he returned to work, how the injury occurred. During testimony before the JCC, Dice admitted that he could not "honestly" remember when claimant reported the injury; whether October 22 or 23, although Dice had previously testified in deposition that he believed, "to the best of [his] recollection" that claimant had telephoned him on October 23rd.
Diane Gaspar, the GM worker's compensation administrator, testified that she received a telephone call from claimant on October 23 during which claimant stated that he was experiencing back pain as a result of work done the previous day; claimant was not asked to elaborate further. Gaspar had gotten the impression that claimant was instructed by a supervisor to notify her. She had not yet received any paperwork regarding the accident. Claimant went to the physician designated by the appellee, and after missing a single day of work, returned to his employment until May 1991, when he was unable to continue working due to back pain. Gaspar testified that a door panel and a support each weighs 55 pounds. GM's own documentation indicates that claimant was instructed to lift a 55 pound part on October 22, 1990.
We are quite cognizant of our standard of review: a JCC's findings are to be sustained if it is permitted by any view of the evidence and its possible inferences. Gomez v. Neckwear, 424 So.2d 106 (Fla. 1st DCA 1982). The JCC, as the finder of fact, has the prerogative of disbelieving a witness. The JCC is free to reject, in whole or in part, even uncontroverted testimony which the JCC disbelieves. Storage Technology Corp. v. Philbrook, 448 So.2d 42 (Fla. 1st DCA 1984); Ullman v. City of Tampa Parks Department, 625 So.2d 868 (Fla. 1st DCA 1993). Nevertheless, the denial of the claim in the instant case was erroneous because the discrepancies in claimant's testimony are of no weight in determining whether or not an accident occurred at all. As stated by claimant, there was no advantageous reason for him to be deliberately untruthful about the part being lifted, the way the part was lifted, or when the accident report was filed. We find that the denial of claimant's claim based on such discrepancies constituted an abuse of discretion. It should be noted that the evidence *307 cited by the JCC as contradicting claimant's testimony was far from being unequivocal and does not defeat the essential facts of his claim: that he injured his back on October 22 lifting a GM part. It is significant that the appellee has not suggested a more logical cause for claimant's injury which was serious enough to require the removal of a disc and the insertion of rods into the spinal column.
The JCC accepted the opinion of Dr. Robert dePadua, M.D., who practices internal medicine, over that of two other medical experts, Dr. Jacob Green, M.D., a board certified neurologist, and Dr. Chaim Rogozinski, M.D., a board certified orthopedic surgeon. These latter physicians examined claimant only after the onset of pain in May 1991; Dr. dePadua examined claimant in October 1990 and in May 1991. The JCC noted, in rejecting the opinion of Green and Rogozinski, that these doctors had given answers to hypothetical questions which contained inaccurate factual predicates. Specifically, these doctors were asked to assume that claimant engaged in frequent heavy lifting when in fact most of the items lifted by claimant during his employment weighed less than 20 pounds. As noted above, claimant returned to full-duty work shortly after the October lifting incident without restrictions and without an impairment rating. Claimant has testified, however, that he worked in pain after his return in November.
All of the medical evidence was presented below by way of deposition and is therefore subject to de novo review by this court. Hubbell v. Triple J of Lee County, 590 So.2d 1084 (Fla. 1st DCA 1991). Having carefully reviewed the record, we cannot agree with the JCC that the hypothetical questions posed to Drs. Green and Rogozinski were inaccurately premised. Rather than being asked to assume that claimant engaged in frequent heavy lifting, as indicated by the JCC, these doctors were asked to assume that claimant engaged in frequent lifting of objects which weighed up to 55 pounds. Thus, the reason given by the JCC for the rejection of the opinions of these doctors is without merit.
As for the JCC's finding that Dr. dePadua was in a better position to evaluate the claimant since dePadua was the only physician to examine him in both October and May, the record reflects that dePadua saw claimant only once after the onset of pain in May  on May 10, 1991. Prior to that time, claimant was seen on only five occasions between October 29, 1990 and November 2, 1990. At the time of the May examination, a straight leg test was positive, indicating the possibility of nerve root irritation. Dr. dePadua testified that he was unable to relate claimant's condition in May to the October lifting incident because of the "time-frame difference." It is important to note that Dr. dePadua did not testify that the October lifting incident and the May onset of pain were not, within a reasonable degree of medical probability, related. Rather, he could not state that the two were related.
The claimant was thereupon advised by dePadua to consult an orthopedic surgeon. When asked to render an opinion in response to a hypothetical question which assumed claimant's work between October and May involved repetitive stooping, bending and lifting, Dr. dePadua refused. Dr. dePadua offered no alternative explanation as to the cause of claimant's obvious physical ailment in May and refused to consider the reasonableness of the cause offered by claimant  that his condition in May was related to the October lifting incident. Dr. dePadua only ordered x-rays in the fall of 1990; the x-rays were not repeated the following spring. By contrast, when Dr. Green began treating the claimant in May 1991 and continuing through the following fall, Green ordered a MRI scan, a bone scan, a CT scan and electrodiagnostic studies. It should be noted, too, that Dr. dePadua's record keeping habits were not exacting with respect to the claimant. For example, Dr. dePadua noted in November 1990 that claimant had a "resolving" lower back condition when he meant, according to his deposition testimony, to report that claimant's condition was "resolved." Also, Dr. dePadua had no record of issuing prescriptions to claimant even though claimant was able to produce at the hearing below a prescription bottle with Dr. dePadua's name on it. Under these particular and somewhat *308 unique circumstances, we find that dePadua offered no opinion as to causation, and that the JCC erred in excluding the other medical evidence. The claim having been proven by competent substantial evidence, and there being an absence of competent substantial evidence to support the denial of the claim, the order denying the claim must be reversed.
Accordingly, we REVERSE and REMAND for further proceedings consistent with this opinion.
MICKLE, J., concurs.
WOLF, J., concurs in result only.