ERVIN, Justice.
The claimant, Miss Dorothy Williams, age S3, was employed by Broward General Hospital District as a medical secretary under the supervision of Dr. Robert J. Pop-piti at the time of her compensable injury on December 29, 1967. She had been so employed for seven years prior thereto. Her injury was an intertrochanteric fracture of the left hip, sustained when she slipped over a door sill.
Dr. James B. Perry, neurologist on whose opinion the Judge of Industrial Claims relied, deposed on July 1, 1968 that claimant was suffering from a spinal cerebellar degenerative process and was unemployable at the.time of her injury. He expressed the opinion that probably 30 to 50 per cent of her condition was related to the spinal degenerative disease.
Claim was made for permanent total disability benefits for compensation and continuing medical care since June 21, 1968. Up to that time claimant had been furnished medical and hospital treatment and nursing home care by carrier. A reduction and internal fixation (nail and pin) had been performed to repair her hip. While claimant was still confined to bed in the nursing home, Dr. John Mahoney, an orthopedist, testified she had reached orthopedic maximum medical improvement on June 21, 1968.
Employer-carrier defended against the claims for permanent total disability benefits for compensation and continuing medical care on the grounds maximum medical improvement had been reached on June 21, 1968; that the carrier had voluntarily paid compensation benefits equivalent to five per cent permanent partial disability of the leg; that claimant’s total disability subsequent to June 21, 1968 was not related to the accident, but was due to pre-existing disease and that claimant’s disability was total prior to the date of accident because of pre-existing unrelated disease and malnutrition which caused claimant to be in fact totally disabled from work as of the date of the accident.
The Judge of Industrial Claims agreed with the grounds of defense interposed by employer-carrier after hearing and consideration of the evidence. He concluded his *61 order denying claim for additional benefits after June 21, 1968, in these words:
“It is clear from the testimony of the multiple witnesses that the claimant was in truth totally disabled from employment and had no earning capacity on December 29, 1967 when she suffered the accident herein. The claimant recovered from the effects of the accident by June 21, 1968 and she is presently suffering from her underlying disease and the obvious ravages of'long time malnutrition with deteriorating physical and mental condition. The claimant’s present physical condition was not caused, aggravated or accelerated by the alleged accident. Her present condition is unrelated to the accident.”
However, in the findings contained in his order, the Judge of Industrial Claims states:
“The record indicates that the claimant was a long time employee of Broward Hospital District under the direct supervision of Dr. Robert J. Poppiti, Pathologist with the Broward General Hospital District. I have carefully examined the testimony of Dr. Poppiti. This doctor testified that during the last few months of the claimant’s employment prior to the accident herein, he was thinking about terminating her employment by way of asking for her resignation for the simple reason that her physical condition was obviously extremely poor. She had difficulty walking. She walked with a slow unsteady gait. She had difficulty with her equilibrium and at times reached out to brace herself on an adjacent wall. She had lost an extreme amount of weight. Her general physical appearance was poor. The claimant’s eccentric personality had deteriorated along with her physical condition and she was creating serious employment problems with fellow employees. Her work, previously excellent, was passable. It is clear from the testimony of Dr. Poppiti and others that the claimant was not of robust appearance in health before December 29, 1967. It is also equally clear from the testimony of Dr. Poppiti that during the last year, and particularly the last few months pri- or to this accident, the claimant’s physical health deteriorated substantially. Obviously from the testimony of Dr. Poppiti he would not have considered this woman for hire on the day of her accident and it was only out of kindness and consideration for her past performance that he had not already terminated the claimant’s employment.” (Emphasis supplied.)
The result reached by the Judge of Industrial Claims is indeed paradoxical. Although claimant suffered from a degenerative spinal disease, and obvious disability, the Judge of Industrial Claims nevertheless found her work “passable” prior to her injury. She had not been terminated from her employment. She sustained a severe hip injury requiring internal fixation and hospital and nursing care over a period of several months. In connection therewith, the Judge of Industrial Claims in his order under review stated:
“Dr. James Perry, a neurologist, testified in the case. In substance, careful examination of Dr. Perry’s testimony leads to the inescapable conclusion that the claimant was suffering from a precisely undiagnosed, underlying debilitating neurological disease. Cross-examination of Dr. Perry indicated that he may have felt the accident in some manner aggravated the claimant’s underlying disease. Close examination of the doctor’s testimony, based on accurate history, makes it clear that he did not believe the accident in any manner aggravated the claimant’s underlying neuogenic [sic] disease.”
The finding of complete unemployableness of claimant and no aggravation of the underlying neurogenic spinal disease at the time of the accident does not appear to be in accord with the facts and consequently is not supported by competent substantial evidence comporting with logic and reason.
*62 Employer and, particularly, her supervis- or, Dr. Poppiti, well knew that claimant was suffering from an obvious disability while she was on the job working, so much so that Dr. Poppiti thought her employment should have been terminated. Dr. Poppiti testified that although she was efficient in her work, nevertheless it was quite noticeable and pronounced that claimant walked with difficulty over a long period of time, her gait was slow and unsteady. After the injury, she was no longer able to work. It appears quite emphatically that her disability was aggravated and accelerated by the injury to the point where thereafter, according to Dr. Perry, she became a “debilitating, unambulating, chronic mess.” He said:
“ * * * So I feel if she was indeed walking and working before this injury, then the injury did set her hack or if it wasn’t the injury itself it certainly caused her to have a complete mental and emotional collapse which often occurs with a disability like this, and the end result was what we saw there at that time, a debilitating unambulating chronic mess, to say the least.” (Emphasis supplied.)
>}: ⅜ ⅜ ⅜ ⅛
“ * * * I don’t think that by the wildest stretch of the imagination that the hip fracture caused this deterioration but I do feel that the complete breakdown of her normal daily routine and her subsequent incarceration in the Broward Hospital and the nurses home certainly compounded this problem and probably aggravated her abilities and maybe the forced rest that usually occurs with a hip fracture caused additional deterioration of her underlying disease process which occasionally and often does.” (Emphasis supplied.)
The findings of the Judge of Industrial Claims based on Dr. Perry’s evaluation of claimant, represent a denial of essential requirements of law. See Andrews v. C. B. S. Division, etc., Fla., 1960, 118 So.2d 206, and United States Casualty Co. v. Maryland Casualty Co., Fla.1951, 55 So.2d 741.
This result reached here is most unusual. The employee was working on her job, admittedly with an open, obvious disability known to her employer. Her work in her employment was “passable” at the time of her job-related accident. Instead, however, of awarding her any permanent total disability benefits whatever, the Judge of Industrial Claims, flying in the face of obvious facts that she was able to walk and work and sustained an on-the-job injury, found her totally unemployable at the time and awarded her nothing. He rejected opinion evidence of Dr. Perry whom he relied on for his findings that claimant’s injury “did set her back,” “caused her to have a complete mental and emotional collapse” and that the “complete breakdown of her normal daily routine” precipitated by the injury “compounded this problem” (her spinal degenerative process) and “probably aggravated her abilities.” He did not consider her employer-known, pre-existing spinal disability apportionable as a predicate for Special Disability Fund consideration. Compare Russell House Movers, Inc. v. Nolin, Fla., 210 So.2d 859, and Cypress Gardens Citrus Products, Inc. v. Murchison, Fla., 240 So.2d 803.
The case is reversed and remanded for reconsideration in light of this opinion.
Consideration should be given to the matter of apportionment as a predicate to possible Special Disability Fund disposition of the case. See F.S. Section 440.49, F.S.A., and subsection 4(b) in particular.
It is so ordered.
CARLTON, ADKINS and BOYD, JJ., concur.
ROBERTS, C. J., dissents.