471 So.2d 119 (1985)
RINKER MATERIALS CORP. and Liberty Mutual Insurance Co., Appellants,
v.
Dennis HILL, Appellee.
No. BC-469.
District Court of Appeal of Florida, First District.
June 4, 1985.
H. Jack Miller, of Miller, Hodges & Kagin, P.A., Miami, for appellants.
Jerold Feuer, Miami, for appellee.
ZEHMER, Judge.
The employer and carrier appeal an order of the deputy commissioner awarding claimant an attorney's fee of $42,000. Finding no error in law or abuse of discretion, we affirm.
One of the three issues raised on appeal merits a short discussion. The employer and carrier complain that the testimony of claimant's economic expert regarding the value of future benefits awarded was not competent or probative because it was erroneously based on facts not supported by the record. The expert testified that the present value of the future psychiatric care awarded claimant is $353,442, based on $70 per session and two sessions per month for the remainder of claimant's life. The employer and carrier argue that there is no competent evidence in the record to support the expert's assumption that claimant will need psychiatric care for the remainder of his life.
We have reviewed the record and note that counsel for the employer and *120 carrier did not contemporaneously object to the expert testimony on the ground that it was founded on facts not in the record. Without such contemporaneous objection before the deputy, there is no basis for reviewing such issue on appeal. Tabasky v. Dreyfuss, 350 So.2d 520 (Fla. 3d DCA 1977); Sears, Roebuck & Co. v. McAfoos, 303 So.2d 336 (Fla. 3d DCA 1974); Lineberger v. Domino Canning Co., 68 So.2d 357 (Fla. 1953). All too often we find that attorneys in workers' compensation proceedings remain silent during the hearing before the deputy when incompetent evidence or opinion testimony is offered and received. Perhaps they do so expecting to argue lack of competent substantial evidence on appeal. But they should be aware of the old adage that hearsay received without objection becomes competent proof of the facts recited, and only by making a contemporaneous objection on proper grounds can the error be properly reviewed on appeal. The deputy and the opposing party are entitled to know what evidence is considered objectionable so that the objection can be addressed and perhaps obviated during the hearing.
The dissent, going behind the failure of the employer and carrier to raise a proper objection, finds that Dr. Gilbert's testimony is not sufficient to support the assumed need for two visits per month for life. Even if we were inclined to review that evidence, it is questionable whether the deputy should be reversed on this ground.[1] The dissent also suggests that the $353,442 estimate of the value of future psychiatric care is grossly overstated, expressing amazement at the expert's assumed inflation factor and his projection that a single one-hour psychiatric visit in the year 2022 will cost $1,412. Claimant's economic expert testified that his opinion of the value of claimant's future psychiatric care is based on a current cost of $70 per session, assumes two sessions per month for the remainder of claimant's life (estimated at 37.236 years), and uses a projected inflation rate of 8.373%, which he determines from the Medical Price Index, Bureau of Labor Statistics, United States Department of Labor. We are not the trier of fact and are not permitted to second-guess the deputy so long as there is competent substantial evidence in the record to support his findings. We might even agree that $1,412 per visit in the year 2022 sounds "amazing," but the fact remains that appellants do not challenge the economic expert's assumed inflation rate on this appeal; they challenge only his assumption that claimant will need psychiatric care for the remainder of his life, a point not properly preserved for appellate review.
AFFIRMED.
WENTWORTH, J., concurs.
NIMMONS, J., dissents.
NIMMONS, Judge, dissenting.
I dissent. In my view, the deputy's award of attorneys fees is not based upon *121 competent substantial evidence. The deputy's award was predicated, in significant part, upon the erroneous finding that "within reasonable medical probability said psychiatric care will be required two times per month for the remainder of the employee's life." The order recited that such finding was based upon the testimony of Dr. Michael Gilbert, claimant's treating psychiatrist. However, Dr. Gilbert did not testify as to how long the claimant would need psychiatric care. In fact, he testified that he was unable to state within reasonable medical probability how long the need for psychiatric care would continue. And, actually, it had been almost a year, at the time of the hearing, since the claimant had been seen by his psychiatrist.
Finally, one naturally wonders about such a substantial sum as $353,442 which was represented to be the present value of future psychiatric care for this 36-year-old man based upon $70 per session and two sessions per month for the rest of his life. The claimant's expert, an attorney who also testifies as an economist in workers' compensation and liability cases, testified that his figures assumed an inflation factor such that a single one-hour psychiatric session in the last year of the claimant's life would cost $1,412. Amazing!
NOTES
[1] Dr. Gilbert was thoroughly cross-examined on this question by Mr. Miller, counsel for the employer and carrier, and even though the doctor did not say the "magic words," he made his point:

Q. There is no doubt [claimant has] got a risk. But, still there is not way that you can predict with any degree of reliability how many times a month he will come in?
Won't you concede that at least?
* * * * * *
THE WITNESS: Let me put it to you this way, Mr. Miller.
You will put yourself into  You're going to paint yourself in a corner. I said I made a conservative estimate early in my testimony, that I estimated once or twice a month.
I was being conservative.
If he decompensates and gets in trouble, I may have to see him every day for a month. That's 30 times in that month or 20-something times in that month.
I am making a conservative estimate to average it out.
But, as I say, he may decompensate, and it will be more than 24 hours in a year.
So, all right, you keep asking me  maybe I'm too conservative.
BY MR. MILLER:
Q. The more time I take, the more you are going to stick the shiv in.
A. No.
I can't say he's going to come in regularly once or twice a month. I said over a year, on the average. I made an estimate about that.
I thought that was conservative.
R. 112-113.