840 So.2d 1071 (2003)
Elva CHAVARRIA, Appellant,
v.
SELUGAL CLOTHING, INC., Clarendon National Insurance Co. and Stirling Cooke Insurance Services, Appellees.
No. 1D00-3467.
District Court of Appeal of Florida, First District.
February 3, 2003.
Rehearing Denied March 31, 2003.
*1072 Charles E. Bloom, of Bloom & Kinnear, Miami, and Randy D. Ellison, West Palm Beach, for Appellant.
Robert L. Teitler and Lazaro C. Rodriguez of Walton, Lantaff, Schroeder & Carson, Miami for Appellees.
EN BANC.
KAHN, J.
In this workers' compensation case, physicians gave expert testimony that, in some regards, was not consonant with testimony given by other physicians. The judge of compensation claims (JCC), as trier of fact, chose to credit portions of certain expert testimony over portions of other expert testimony. The disciplines involved are orthopedics and psychiatry. Because the JCC followed the rule required by both statute and supreme court precedent, we affirm.

I.
Appellant Elva Chavarria suffered a significant crush injury to her right hand as the result of an industrial accident on September 10, 1996. The JCC rejected the testimony of two orthopedists concerning the degree of physical impairment in favor of evidence provided by Chavarria's longtime treating physician. The JCC also accepted psychiatric testimony concerning degree of impairment that differed from other testimony.
The issue concerning the orthopedic testimony centers upon a difference between the testimony of Dr. Richard Rogachefsky and Dr. Jay Dennis. The JCC made the following observations concerning the orthopedic testimony:
3. Dr. Richard Rogachefsky (orthopedic surgeon/hand surgeon) diagnosed the Claimant with a right hand crush injury with fractures of the two through five metacarpals. He initially operated on the Claimant's right hand on September 12, 1996 at Jackson Memorial Hospital. Dr. Rogachefsky performed a second surgery to the Claimant's right hand on March 20, 1997 to further correct the problem, and released the Claimant to light duty work on June 24, 1997, with the following restrictions: she can work an eight hour day, she can stand, sit and walk for five to eight hours, she can drive one to three hours, she can do simple grasping of both hands, no pushing/pulling on the right, she can on the left, fine manipulation on both hands, she can bend, squat, reach above shoulders, kneel and use foot controls continuously, she cannot climb or crawl, and she can lift a maximum of ten pounds. He continued to treat the Claimant and placed her at Maximum Medical Improvement (M.M.I.) on February 4, 1998, with an 11% permanent impairment rating to the body as a whole. At that time Dr. Rogachefsky issued the following permanent work restrictions: no heavy pushing or pulling on the right, no climbing or crawling, lift maximum of 20 lbs. On June 16, 1999, Dr. Rogachefsky performed a third surgery on the Claimant's right hand to remove a plate from the second and fifth metacarpals. Subsequent to the third surgery, Dr. Rogachefsky moved his practice to New York and his partner, Dr. Jay Dennis, took over as the authorized treating provider *1073 for the Claimant's right hand injury.
4. Dr. Jay Dennis (orthopedic surgeon / hand surgeon) first saw the Claimant on August 3, 1999. Dr. Dennis continued to treat the Claimant through October 8, 1999, at which point he placed her at Maximum Medical Improvement (M.M.I.). At his deposition of May 9, 2000, Dr. Dennis initially indicated that he concurred with the permanent impairment rating of 11% given by Dr. Rogachefsky back on February 4, 1998. However, upon conducting an additional review of the 1996 Florida Impairment Guide at said deposition, Dr. Dennis indicated that in his opinion the Claimant had a 16% permanent impairment rating to the body as a whole as a result of her right hand crush injury. He further agreed with the work restrictions issued by Dr. Rogachefsky on February 4, 1998 (stated above). Dr. Dennis also indicated that there was nothing else that could be done for the Claimant from an orthopedic/hand surgeon standpoint, and that the Claimant may benefit from the care of a pain management specialist.
5. Dr. Dennis Zaslow (orthopedic surgeon) performed an Independent Medical Examination (I.M.E.) of the Claimant (on behalf of the Claimant) on January 26, 1999. At his deposition of April 3, 2000, Dr. Zaslow testified that the Claimant had reached Maximum Medical Improvement for her right hand condition as of January 26, 1999, with a 16% permanent impairment rating to the body as a whole. He also opined that the Claimant would not be able to return to work as a result of her right hand condition.
* * *
12. I accept the medical opinion evidence as contained in the medical records of Dr. Richard Rogachefsky indicating the Claimant's Maximum Medical Improvement (M.M.I.) date for her right hand condition to be February 4, 1998, and setting the Claimant's permanent physical impairment rating to the body as a whole at 11%. I also accept the Claimant's physical work restrictions as indicated by Dr. Rogachefsky on February 4, 1998 of no heavy pushing or pulling on the right, no climbing or crawling, lift maximum of 20 lbs. (subsequently reiterated and adopted by Dr. Jay Dennis).
13. I accept the medical opinion testimony of Dr. Jay Dennis once again placing the Claimant at Maximum Medical Improvement (M.M.I.) (after her last surgery of June 16, 1999) for her right hand condition on October 8, 1999.[[1]] I also accept Dr. Dennis' medical opinion testimony indicating that the Claimant may benefit from the services of a pain management specialist. I, however, reject the 16% permanent physical impairment rating assigned by Dr. Dennis to the body as a whole, as I accept the 11% permanent physical impairment rating assigned by Dr. Rogachefsky (see above) since the Claimant's physical condition was virtually unchanged after February 4, 1998 (only a plate removal *1074 procedure took place after said date), and Dr. Rogachefsky performed all three surgeries on the Claimant and treated the Claimant for a longer period of time.
The JCC made the following findings with regard to the psychiatric testimony:
7. The Claimant's treating psychiatrist, Dr. Angel Diaz, diagnosed "adjustment disorder with depressive and anxiety features, chronic type, and pain disorder, chronic type." He treated the Claimant and placed her at Maximum Medical Improvement from a psychiatric standpoint on October 20, 1999, and assigned a 10% permanent psychiatric impairment rating to the body as a whole. Dr. Diaz released the Claimant to light duty work as of that date with the following restrictions: "no complex tasks, no quotas or deadlines to be met, and not to deal with the public."
8. Dr. Juan Espinosa (psychiatrist) performed an Independent Medical Examination (I.M.E.) of the Claimant (on behalf of the Employer/Carrier/Servicing Agent) on January 26, 2000, and opined at this deposition of May 10, 2000, that while the Claimant may still improve from additional psychiatric treatment, he would issue a permanent impairment rating of 5% to the body with a depressive disorder, mild to moderate. He further opined that the Claimant was able to work from a psychiatric standpoint, with the only restriction being to limit employment to low stress jobs.
* * *
14. I accept the medical opinion testimony of Dr. Juan Espinosa, psychiatrist, who diagnosed the Claimant with a depressive disorder, mild to moderate. I also accept Dr. Espinosa's medical opinion testimony indicating the Claimant to have a psychiatric impairment rating to the body as a whole of 5% as of January 26, 2000, and indicating that the Claimant is able to return to work from a psychiatric standpoint with the only work restriction being low stress.
15. I accept the medical opinion testimony of Dr. Angel Diaz, psychiatrist, to the extent that it is consistent with the medical opinion testimony of Dr. Juan Espinosa (above). Dr. Diaz diagnosed the claimant with "adjustment disorder with depressive and anxiety features, chronic type, and pain disorder, chronic type", placed the Claimant at Maximum Medical Improvement from a psychiatric standpoint on October 20, 1999, and released the Claimant to light duty work as of that date with the following psychiatric work restrictions: "no complex tasks, no quotas or deadlines to be met, and not to deal with the public."
Claimant has never argued, either before the JCC or before this court, that the evidence provided by Dr. Rogachefsky or Dr. Espinosa was legally incompetent and, therefore, could not serve as the basis for a decision. Cf., e.g., Rinker Materials Corp. v. Hill, 471 So.2d 119 (Fla. 1st DCA 1985) (rejecting an argument that testimony of an economic expert was not competent because it was based on factual assumptions not supported by the record and noting that such argument would not be considered on appeal because no contemporaneous objection was made before the JCC). Although Dr. Rogachefsky provided his orthopedic impairment rating as part of his medical chart rather than in testimony, "[a]ll medical reports of authorized treating health care providers relating to the claimant and subject accident *1075 shall be received into evidence by the judge of compensation claims upon proper motion." § 440.29(4), Fla. Stat. (1999). Nevertheless, appellant argues on appeal that under certain case law, the JCC failed to provide adequate reasons for acceptance of the Rogachefsky and Espinosa opinions.

II.
Workers' compensation law in Florida is statutory. See Thompson v. Fla. Indus. Comm'n, 224 So.2d 286, 287 (Fla.1969) (noting that the remedy for any inadequacy in the Workmen's Compensation Act lies with the Legislature and not with the Industrial Commission or the court); Fournigault v. Jackson Mem'l Hosp. Standard Accident Ins. Co., 87 So.2d 102, 104 (Fla.1956) ("Workmen's compensation is statutory...."). For this reason, court decisions in the area of workers' compensation law, generally speaking, must apply, explain, or interpret statutory law. Our supreme court recognized this in a line of cases examining the requirements applicable to orders drafted by compensation judges.

A.
In Ball v. Mann, 75 So.2d 758 (Fla. 1954), the court reviewed an order of the full Industrial Commission that had affirmed an order of the deputy commissioner. In language completely faithful to the then-controlling statute, the Ball court set out the rule it would apply:
In disposing of a claim for compensation, a Deputy Commissioner has a duty to make findings of fact. Section 440.25(3)(b), F.S.1951, F.S.A. Mere recitals of the evidence do not satisfy this requirement. A Deputy Commissioner should resolve all conflicts in the evidence upon material matters and make specific findings of fact to show clearly the basis for the award.
Id. at 760.[2]
In Hardy v. City of Tarpon Springs, 81 So.2d 503 (Fla.1955), the court relied upon the same statute, which, as noted, required a statement of the findings of fact and other matters pertinent to the questions at issue. In so doing, the Hardy court disapproved an order that, in the view of the court, established "a serious procedural impediment" because it "fails to set out what facts were relied upon to determine the case." Id. at 505. The Hardy court cautioned deputy commissioners that they must not only weigh and consider the evidence in compensation cases, but also must translate such evidence "into express findings of fact which constitute the foundation on which [the] decision must rest." Id. The Hardy court noted, however, that its stringent pronouncement was in "compliance with the statutory requirements...." Id.
Next, in Andrews v. C.B.S. Division, Maule Industries, the court noted that in workers' compensation, "[t]he evaluation of conflicting medical opinions ... has been a source of much litigation and dispute." 118 So.2d 206, 211 (Fla.1960). The court went on to note that the statutory law "does not permit the deputy commissioner to select the testimony of the medical witness he wishes to believe and reject the others without some logical reason for doing so." Id. at 212. The court also noted that the "reviewing tribunal," at that time the Florida Industrial Commission, *1076 could not "determine the correctness of the conclusions of the deputy commissioner unless he makes proper findings and explains his reasons for rejecting or accepting the testimony of one medical expert over that of another." Id. Although laying down these rather stringent rules for compensation orders, the court readily noted that the controlling rule for review of workers' compensation orders is "whether there is substantial, competent evidence in accordance with logic and reason to sustain the finding of the deputy commissioner...."[3]Id. at 208.
Despite the Andrews court's faithful recitation of the competent substantial evidence rule, it appears that the rule sometimes found itself at odds with the special rule developed under the statute for situations where a compensation judge had to select the testimony of one doctor over that of another or others. The cases indicate, however, that the polestar rule has been, and should continue to be, the competent substantial evidence rule. In Crowell v. Messana Contractors, 180 So.2d 329 (Fla.1965), the court struck down a ruling of the Industrial Commission in a case where the Commission improperly substituted its own conclusion for that of the compensation judge. The court began the opinion by noting that the competent substantial evidence rule of United States Casualty Co. v. Maryland Casualty Co., 55 So.2d 741 (Fla.1951), is the controlling rule. As the court put it, the competent substantial evidence rule must allow room for the compensation judge "as trier of the facts [to] accept the testimony of one doctor over the testimony of several others." 180 So.2d at 330. In Crowell, the compensation judge decided that one doctor who testified on behalf of the claimant should be accepted over several doctors who did not agree with the claimant's doctor. See id. When the full Commission disagreed, the supreme court granted certiorari and held that simply because the compensation judge accepted the statement of one qualified physician who testified contrary to the word of three specialists, the court would not find that such acceptance amounted to "bland disregard" of the contrary evidence. Id. Accordingly, the court reversed the order of the full Commission and reinstated the compensation judge's ruling. See also Gonci v. Panelfab Prods., Inc., 179 So.2d 856 (Fla.1965) (quashing the order of the full Commission where the order of the compensation judge clearly satisfied the requirements of Andrews and other cases).

B.
The evolution of the rule continued in the 1970's with a trio of workers' compensation cases decided by the Florida Supreme Court. See Pierce v. Piper Aircraft Corp., 279 So.2d 281 (Fla.1973); Vargas v. Americana of Bal Harbour, 345 So.2d 1052 (Fla.1976); Buro v. Dino's Southland Meats, 354 So.2d 874 (Fla.1978). It appears that these cases fairly well comprised the supreme court's last word before the era in which this court has taken over responsibility for review of workers' compensation cases.[4]
*1077 In Pierce, the court discussed both the early cases and the changing nature of the Industrial Relations Commission which, at that time, was charged with reviewing the orders of compensation judges. 279 So.2d at 283-84. According to the court, at the time the decisions in Ball, Hardy, and other earlier cases were rendered, compensation orders were "reviewed by a part-time Commission not required to have legal training, and who, we take notice, usually did not have such." Id. at 283. Because of the lack of expertise on the part of the early Commission, the court had crafted a rule requiring "detailed and precise findings of fact." Id. The Pierce court then noted, however, that the nature of both the Commission and of the controlling statute had changed. See id. at 283-84. In 1967, the Florida Legislature amended section 440.25(3)(c), Florida Statutes, to provide:
The order making an award or rejecting the claim (referred to in this chapter as a compensation order) shall set forth the findings of ultimate facts and the mandate, and the order need not include any other reason or justification for such mandate....
(emphasis added). See Ch. 67-374, Laws of Fla. Nevertheless, as the Pierce court observed, the supreme court subsequent to this amendment, in Brown v. Griffin, 229 So.2d 225 (Fla.1969), held that the statutory change "did not operate to relieve Judges of Industrial Claims from making findings of fact sufficient to meet the requirements of Ball v. Mann ... and Hardy v. City of Tarpon Springs ...." Pierce, 279 So.2d at 283.
The 1967 statutory change was, however, followed by a 1971 change in the nature of the Commission characterized by the Pierce court as "a new era when the Governor reorganized [the Commission] into the fashion of a court." Id. at 283-84. Beginning in 1971, the Commission began to operate much like a district court of appeal. See id. Accordingly, the court concluded that its earlier decisions in Ball, Hardy, and Brown should be reevaluated. See id. at 284. The court set out the new rule:
We now hold the Judge of Industrial Claims need make only such findings of ultimate material fact upon which he relies, as are sufficient justification to show the basis of an award or denial of a claim. A long, verbose explanation of the reasoning for making such findings of fact is not required. However, where testimony of two or more expert witnesses of comparable qualification are in direct conflict, it will be helpful to the Commission and this Court if some explanation is given as to why the testimony of one is accepted and the other rejected.

Id. We perceive the holding of Pierce to have been that a compensation judge need only make findings of ultimate material fact, but we note that the court went on and, in hortatory language, suggested that compensation judges explain the acceptance of medical testimony that is in conflict with other medical testimony. This dicta, for better or worse, has led to thirty years of interpretive case law.
The court itself soon acknowledged that difficulty had apparently been engendered "from variant views as to [the] directive in Pierce v. Piper Aircraft Corp., ..." Vargas, 345 So.2d at 1053. In Vargas, the court elaborated upon the directive of Pierce, which, in the view of the court, was *1078 simply an application of the controlling statute, section 440.25(3)(c), Florida Statutes (1975):
The detail in which such findings must be stated is succinctly described in Section 440.25(3)(c) as the "ultimate facts", the same formulation we expressed in Pierce. This statutory directive requires the written identification of all facts essential to industrial claims decisions, with the degree of specificity as to recorded text, source in the record, or other identification determined in the context of the dispute. That was our holding in Pierce. In cases where there is limited or no argument concerning the facts, the judges need only state the basic facts required by law to exist in order to sustain or reject an award, and to identify the sources of those facts in the record. Where factual disputes exist, more specific findings are required as to the judge's basis for reliance, again with adequate references to the record. By no means, however, do we here mean to resurrect the detailed discussion of testimony which was once imposed on judges of industrial claims. The statute does not require that degree of elaboration. It does, however, require cogency in fact finding.
345 So.2d at 1054.
Six months after the Vargas decision, the court once again had occasion to construe Pierce, and in so doing, fashioned the rule that, in our view, has continued as the proper rule by which to evaluate the findings of compensation judges. In Buro, the Commission had reversed a compensation order "for failure of the Judge of Industrial Claims to state sufficient facts for review by the Commission...." 354 So.2d at 875. Sharpening its view of Pierce, as refined by Vargas, the court concluded it would "not deem it essential, in view of the teachings of Pierce ... for the Judge of Industrial Claims to explain precisely why he accepts the testimony of one doctor and rejects that of another." Id. at 877. The court then stated its rationale in language with which this court has admittedly struggled for many years: "[I]t is clear that the Judge of Industrial Claims did not ignore or overlook the opinion testimony of Dr. Kurzner; he merely chose to accept the opinions of Drs. Pollock and Boschowitz instead." Id. (emphasis added). The Buro court then firmly rejected a plea that it "insist upon more elaborate findings of fact by the Judge of Industrial Claims as to matters such as are involved here." Id. The rule of Buro is not confusingthe statute as applied by the supreme court requires a reviewing tribunal to approve the decision of a compensation judge accepting the testimony of one doctor over that of another unless the tribunal can say that the judge ignored or overlooked the rejected opinion testimony.

C.
In 1979, this court became the tribunal for appellate review of workers' compensation cases. See Ch. 79-312, Laws of Fla. In one of the earlier decisions, we had no difficulty applying the rule of Pierce, Vargas, and Buro. As clearly stated by Judge Wentworth:
It is the deputy's function to determine credibility and resolve conflicts in the evidence, Grillo v. Big "B" Ranch, 328 So.2d 429 (Fla.1976), and he may accept the testimony of one physician over that of several others, Crowell v. Messana, 180 So.2d 329 (Fla.1965). The deputy "need make only such findings of ultimate material facts upon which he relies, as are sufficient justification to show the basis of an award...." Pierce v. Piper Aircraft Corp., 279 So.2d 281 (Fla.1973); see also, Vargas v. Americana of Bal Harbour, 345 So.2d 1052 (Fla. 1976). He need not explain precisely *1079 why he accepts the testimony of one witness and rejects that of another as long as it does not appear that he ignored or overlooked contrary testimony. Buro v. Dino's Southland Meats, 354 So.2d 874 (Fla.1978).
Jefferson Stores, Inc. v. Rosenfeld, 386 So.2d 865, 865-66 (Fla. 1st DCA 1980). The rule, as thus firmly established in Rosenfeld, should not have caused us difficulty, but it has.

III.

A.
Almost immediately, this court, purporting to apply the rule of Rosenfeld, which, in turn, had applied Pierce, Vargas, and Buro, stated that an explanation as to why the compensation judge accepts one expert over another will be "mandatory" when (1) the reason for the finding in the order is not apparent from the record, or (2) it might appear that the deputy commissioner has overlooked or ignored the testimony of a witness. Rouse v. Wyldwood Tropical Nursery, 392 So.2d 370, 373 (Fla. 1st DCA 1981). The first circumstance leading to mandatory explanation in Rouse was not engendered by Buro or Rosenfeld. Instead, we cited as authority a ruling of the previous Industrial Relations Commission, Lakeland Ford, Inc. v. Harrelson, IRC Order 2-3885 (Aug. 10, 1979). See id. at 373. Rouse did not acknowledge the statutory directives relied upon by the supreme court in Pierce, Vargas, and Buro. This court's adoption of a rule from an IRC order, where such rule claimed no support in the relevant supreme court case law, is, perhaps, puzzling. More to the point, it is the first prong of the so-called rule, as formulated in Rouse, that has caused abundant litigation and opinion writing. Although this court initially attempted to adhere to the simple test of Buro and Rosenfeld, as years went by, the first prong of the test, as adopted by Rouse, has emerged the more robust statement of the rule, almost to the exclusion of the true rule requiring that a reviewing court determine whether the compensation judge overlooked or ignored testimony.[5]
Eventually, this court, somewhat ironically, began itself to overlook or ignore the test of Buro, in favor of the first prong of the Rouse formulation. For instance, in Fritz v. Courtyard by Marriott, 592 So.2d 1167, 1170 (Fla. 1st DCA 1992), we stated, "[a]lthough the JCC is authorized to accept the testimony of one doctor over that of others, he must give reasons therefor that are supported by the record." See also Gainesville Coca-Cola v. Young, 596 So.2d 1278, 1279 (Fla. 1st DCA 1992).
Another line of cases, following Rosenfeld, at least acknowledged, quite correctly, the "ignore or overlook" formulation developed by the supreme court. In Finkel v. Enterprise Building Corp., 427 So.2d 1084, 1085 (Fla. 1st DCA 1983), for instance, the court found it apparent from the order that the compensation judge did not ignore or overlook certain rejected medical testimony. *1080 See also Travelodge v. Pierre-Gilles, 625 So.2d 1280, 1282 (Fla. 1st DCA 1993) (noting that the compensation judge failed to set out reasons for choosing one doctor over another, but also stating, "it appears that the judge of compensation claims has either overlooked or ignored evidence in the record").
Also, following Rosenfeld, this court has acknowledged that the decision to accept the testimony of one physician over another is actually part of the familiar competent substantial evidence rule. "The acceptance and rejection of medical testimony rests with the deputy and his discretion should not be disturbed unless the medical testimony itself fails to meet the rest of the substantial evidence rule." S & S Stove Repair, Inc. v. Dumas, 465 So.2d 644, 646 (Fla. 1st DCA 1985). Indeed, at least one dissenting opinion from this court has correctly noted the relationship between the rule of competent substantial evidence and the statutory rule required by the supreme court precedent:
The right of an appellate court to reverse and remand a compensation order so that it may be clarified is derived from section 440.25(3)(e), Florida Statutes (1989), providing in part:
The order making an award or rejecting the claim, referred to in this chapter as a "compensation order," shall set forth the findings of ultimate facts and the mandate; and the order need not include any other reason or justification for such mandate.

(Emphasis added.) In Brown v. Griffin, 229 So.2d 225 (Fla.1969), the Florida Supreme Court construed the above provision, which had been amended in 1967. Among other things, the court noted that the legislature had added the word "ultimate" before the word "facts" and eliminated the prior provision requiring a compensation order to set forth "other matters pertinent to the questions at issue." Id. at 226. It continued that in enacting the amended statute, the legislature intended to reduce the unnecessary length of compensation orders "to a concise but complete statement of the findings of fact ... on all factual issues in the case," but still required "sufficient detail to permit application of the substantial competent evidence rule but without undue elaboration." Id. at 228.
In Pierce ..., after the Industrial Relations Commission was reorganized, the court modified Brown to require even less detail, stating: "We now hold the Judge of Industrial Claims need make only such findings of ultimate material fact upon which he relies, as are sufficient justification to show the basis of an award or a denial of a claim." Id. at 284.
Based upon my examination of the JCC's findings, I conclude that the JCC did all that he was required to do by the statute: he set forth findings of ultimate facts which were supported by competent, substantial evidence (CSE). The CSE rule means that a compensation order will be upheld if there is any CSE to support the judge's decision. See Trujillo v. Southern Wine & Spirits, 525 So.2d 481 (Fla. 1st DCA 1988).

Above All Drywall v. Shearer, 651 So.2d 195, 197-98 (Fla. 1st DCA 1995) (footnotes omitted) (Ervin, J., dissenting).

B.
During the last decade, this court has reasserted the statutory duties of the JCC, as reflected by our Rosenfeld decision. For instance, in Florida Mining & Materials v. Mobley, 649 So.2d 934, 934 (Fla. 1st DCA 1995), we rejected a request by the appellant that this court undertake an independent review of medical evidence *1081 presented by deposition, and thereby disagree with the JCC's conclusion:
[T]he case may not be retried on appeal, and a ruling which is supported by competent substantial evidence will be upheld even though there may be some persuasive evidence to the contrary. Swanigan v. Dobbs House, 442 So.2d 1026 (Fla. 1st DCA 1983); Gomez v. Jack Steinberg Neckwear, 424 So.2d 106 (Fla. 1st DCA 1982); see also GTE v. Miller, 642 So.2d 1188 (Fla. 1st DCA 1994). The resolution of such conflicts is within the fact-finding authority of the judge of compensation claims. Jefferson Stores v. Rosenfeld, 386 So.2d 865 (Fla. 1st DCA 1980).
(emphasis added). Then in Johnson v. Martin Paving, 659 So.2d 347, 347 (Fla. 1st DCA 1995), we reiterated the view that "the resolution of any conflicts [in the medical evidence] remains within the factfinding authority of the judge of compensation claims."
In the majority of workers' compensation cases, medical evidence is by deposition or by reports contained in the record. As we noted in Frederick v. United Airlines, 688 So.2d 412 (Fla. 1st DCA 1997), a rule allowing this court to independently evaluate medical testimony is actually contrary to the premise of Rosenfeld that resolution of medical conflict is within the fact-finding authority of the JCC. We rejected, as we had previously done in Mobley, "the suggestion that [this court] undertake an independent review of the medical evidence presented by deposition in a workers' compensation case...." Id. at 413. We now conclude that the Rosenfeld court properly stated the rule as formulated by the Florida Supreme Court in Pierce, Vargas, and Buro. Moreover, the statute relied upon in Pierce remains unchanged today and is codified at section 440.25(4)(e), Florida Statutes (2001). The court intends to follow this rule.

C.
Although the first prong of the rule formulated in Rouse, as noted in this opinion, has been observed in many cases, we cannot help noting that an analysis of the authority upon which Rouse purported to rely, does not support the rule. In Rouse, as noted above, this court reformulated the "ignored or overlooked" test of the supreme court into a two-prong rule by which this court should not only satisfy itself that the compensation judge had not overlooked or ignored contrary medical testimony, but also must satisfy itself that the reason for the judge's finding is either explained in the order or is apparent from the record. As authority, Rouse cited Lakeland Ford, Inc. v. Harrelson, IRC Order 2-3885 (Aug. 10, 1979). Simply put, the Harrelson case did not involve the issue we analyze todaythe circumstances under which a JCC may accept or reject the testimony of one physician when it is contradicted by the testimony of other physicians. Harrelson concerned a situation where the Judge of Industrial Claims declined to follow any medical testimony and, instead, formulated his own opinion as to a claimant's degree of permanent impairment. As the IRC stated, the judge does not have a free hand "to override the technical opinion of testifying experts where ... the judge gives no reason for ignoring the experts and the reason is not apparent from the record...." Id. The IRC's order in Harrelson merely followed the competent substantial evidence rule, because in that case, no competent substantial evidence supported the conclusion of the compensation judge. In Rouse, we picked up the IRC's language concerning the judge giving a reason for "ignoring" experts where such reason is not apparent from the record in a case that involved, not *1082 the issue in Harrelson but, instead, the issue before us today, the acceptance of one doctor's testimony over that of another. When examined in the light of the preceding law from the supreme court and this court, Rouse simply does not have persuasive force and effect.
We do note the obviousthe JCC who is thorough enough to note reasons for acceptance of certain medical testimony will make clear that he or she has not simply ignored contrary opinions. An order thus drafted should be well-provisioned for appellate review.

IV.
Here we have no choice but to conclude that the JCC neither overlooked nor ignored the competing testimony of either the orthopedists or the psychiatrists. In fact, the judge set out the essence of the testimony given by each of the physicians. The JCC then proceeded to accept the testimony given by Dr. Rogachefsky and adequately explained his reasons. The JCC also accepted the testimony of Dr. Espinosa over that of Dr. Diaz, but did not provide an explicit explanation. Nevertheless, the order demonstrates that the JCC considered the testimony of Dr. Diaz and, in fact, adopted much of what Dr. Diaz stated. The order before us therefore meets the test established by the Florida Supreme Court for such cases.
AFFIRMED.
ALLEN, BOOTH, BARFIELD, WOLF, WEBSTER, DAVIS, BENTON, VAN NORTWICK, PADOVANO, LEWIS, POLSTON, and HAWKES, JJ., concur; ERVIN, J., concurs and dissents w/ opinion; BROWNING, J., concurs in part and dissents in part w/ opinion.
ERVIN, J. concurring and dissenting.
Although I agree with the majority's implicit affirmance of the judge of compensation claims' (JCC's) finding that claimant had a substantial earning capacity, based upon his acceptance of the employer/carrier's vocational expert's opinion, I dissent from its affirmance of the two remaining points pertaining to the JCC's unexplained acceptance of the psychiatric permanent impairment (PI) rating of an independent medical examiner (IME) over that of claimant's authorized psychiatrist, and the JCC's approval of Dr. Rogachefsky's orthopedic PI rating, rather than those of other physicians. I would reverse as to those findings and remand the case with directions to the JCC to provide sufficient findings for the purpose of enabling this court to conduct meaningful judicial review.
The remainder of this opinion is divided into three parts. The first addresses why the portion of the order accepting the psychiatric PI rating fails to satisfy the competent, substantial evidence (CSE) test as formulated by the Florida Supreme Court; the second, why the correct review standard, as applied to the issue of the JCC's acceptance of Dr. Rogachefsky's PI rating, is de novo, and, even if the finding is reviewable by the CSE standard, why the finding does not satisfy such standard; and the third is a summation of the first two parts.

I.
Although I am unsure precisely what rule the court's en banc opinion has approved, it seems to say that an order of a JCC will be affirmed if it is permitted by any view of the evidence and its permissible inferences. In another passage it implies that all orders will be upheld unless it appears that the JCC "ignored or overlooked" contrary evidence in the record. *1083 Consequently, an order that satisfies either or both of the above tests need not be remanded for further findings. If this is in fact the effect of the majority's decision, it represents a profound and substantial departure from the CSE review standard approved by the Florida Supreme Court. It is one, moreover, I strongly question this court's authority to adopt.
The majority cites in support of its decision a number of supreme court opinions that have applied the CSE rule to the findings of the trial arbiter in workers' compensation cases. Those cases, however, established a review standard that is far different from that espoused by the majority. In Ball v. Mann, 75 So.2d 758 (Fla.1954); Hardy v. City of Tarpon Springs, 81 So.2d 503 (Fla.1955); and Andrews v. C.B.S. Division, Maule Industries, 118 So.2d 206 (Fla.1960), the supreme court discussed the role of an appellate tribunal in applying the CSE standard to its review of a compensation order. As explained in Ball, 75 So.2d at 760, the deputy commissioner's findings of fact are conclusive if they are supported by evidence, but the award must be correct under the law. Stated another way, when reviewing a compensation order, the appellate authority must determine whether the findings of fact are supported by the evidence and whether the order based thereon is correct under the law. Hardy, 81 So.2d at 505.
The deputy commissioner's statement of facts must be sufficiently detailed "to enable the reviewing authority to test the validity under the law of the decision resting upon those facts." Id. at 506. A fact finder's failure to set forth sufficient reasons for a decision in a case involving conflicting evidence creates a serious procedural impediment, and this "deficiency goes to the very heart of the procedure for the review of compensation orders." Id. at 505. In the absence of sufficient factual findings, a reviewing tribunal is left to speculation and conjecture on the correct meaning of a particular order, and it cannot properly perform its function of "ascertaining whether findings which have been made are properly supported by the evidence." Id. at 507.
Andrews sets forth an even more exhaustive discussion regarding the appellate review function and the application of the CSE standard in addressing conflicting medical evidence. The court recognized that the question the reviewing body must answer is whether there is CSE which accords with logic and reason to sustain the finding of the JCC. The court explained:
While, of course, the evidence must accord with logic and reason (otherwise it would not be competent) it is really the result that must attain that quality. To put it another way, if the evidence is not logical and reasonable, a finding based on and supported by such evidence would be based on incompetent evidence and hence be contrary to law.
Andrews, 118 So.2d at 210-11. When a fact finder is faced with conflicting medical evidence (six doctors provided irreconcilable opinions in Andrews ), the court noted it was the responsibility of the trial arbiter to evaluate all of the testimony, and it emphasized that such obligation does not end once some support is found in the evidence for the acceptance of a particular medical determination:
The instant case presents a classic example of diametrically opposed opinions from what appear to be qualified doctors. It must be admitted that this is not an unusual occurrence in these cases. As we have pointed out, the law does not permit the deputy commissioner to select the testimony of the medical witness he wishes to believe and reject *1084 the others without some logical reason for doing so. And, we repeat, the reviewing tribunal cannot determine the correctness of the conclusions of the deputy commissioner unless he makes proper findings and explains his reasons for rejecting or accepting the testimony of one medical expert over that of another. The purpose of a reviewing tribunal is to determine the correctness of the actions being reviewed, not to read-and decide for itself-the weight of the evidence.
Id. at 212.
The court fashioned the following test to determine whether a fact finder's order accepting one of several conflicting medical opinions is supported by CSE:
The weight of all the opinions of medical experts must be considered in the order of the deputy commissioner before such order may be considered as having been supported by competent, substantial evidence or, it must appear from the deputy's order that some basis existed for rejectingor qualifiedly considering medical testimony that otherwise appears to be valid and acceptable.
Id. at 211.
The standard the majority now adopts would apparently uphold a finding similar to that made by the deputy in Andrews, because there was support for it in the record. The Andrews court, however, ruled that the finding of the deputy commissioner who had simply relied on the testimony of the three physicians to support his ruling could not be considered CSE
since it did not establish a substantial basis of fact from which the fact at issue could have been reasonably inferred. In other words, the evidence relied upon by the deputy commissioner and interpreted by him when considered with the other evidence in the record neither discussed nor referred to by the commissioner was not such relevant evidence as a reasonable mind would accept as adequate to support the conclusion at which he arrived and, therefore, neither the evidence relied upon nor the conclusion reached thereon was in accord with the logic and reason as the law requires.
Id. at 210 (footnotes omitted).
I am not sure whether the majority is now saying that the Andrews rule requiring a careful examination of the trial arbiter's findings to ensure that the result reached accords with logic and reason has been superseded by later supreme court authority. If such is its intent, I consider it important to point out that the court has never receded from the language it used in Andrews. In fact, both the supreme court and this court have cited Andrews with approval in a number of cases. See, e.g., Williams v. N. Broward Hosp. Dist., 247 So.2d 59, 62 (Fla.1971); Tenbroeck v. N. Broward Hosp. Dist., 243 So.2d 592, 593 (Fla.1971); Abbenante v. United Parcel Serv., Inc., 241 So.2d 1, 3 (Fla.1970); Thomas v. Salvation Army, 562 So.2d 746, 749 (Fla. 1st DCA 1990); Philpot v. City of Miami, 541 So.2d 680, 683 (Fla. 1st DCA 1989). Moreover, the cases cited by the majority do not lend support to any such conclusion.
The trio of cases referred to in Section B of the majority's opinion, Pierce v. Piper Aircraft Corp., 279 So.2d 281 (Fla.1973); Vargas v. Americana of Bal Harbour, 345 So.2d 1052 (Fla.1976); and Buro v. Dino's Southland Meats, 354 So.2d 874 (Fla.1978), do not address an appellate body's review function. Rather, they are limited to a discussion of the JCC's fact-finding responsibility following the legislature's amendment to section 440.25(3)(c), Florida Statutes (1967), requiring the JCC to set forth "findings of ultimate facts and the mandate." The statutory amendment did *1085 not affect this court's review process, as I explained in my dissent in Above All Drywall v. Shearer, 651 So.2d 195 (Fla. 1st DCA 1995):
[T]he legislature intended to reduce the unnecessary length of compensation orders "to a concise but complete statement of the findings of fact ... on all factual issues in the case," but still required "sufficient detail to permit application of the substantial competent evidence rule but without undue elaboration."
Id. at 198 (quoting in part Brown v. Griffin, 229 So.2d 225 (Fla.1969)).
Instead of limiting the application of Pierce, Vargas and Buro decisions to the facts and issues then before the supreme court, the majority uses isolated portions of those opinions as a springboard to launch its own independent CSE standard and thereby disregard long-established Florida Supreme Court precedent regarding an appellate court's CSE function. Indeed, a cursory reading of Pierce, Vargas and Buro shows that in each instance the court found that the deputy commissioner's reasoning was explained or apparent in the record for the choices made. Thus, there was no need in any of the above cases to repeat the warnings of Ball, Hardy and Andrews regarding the need for sufficient findings to permit intelligent judicial review. Nevertheless, the majority employs the above trio as a vehicle to bring about the result-oriented review process it now champions. The significance of such a departure from established precedent cannot be understated or ignored.
It is clear from a reading of the order, recited at page ____ of the majority's opinion, that the JCC offered no explanation whatsoever concerning why he rejected the psychiatric PI rating of the treating psychiatrist, who had cared for claimant for nearly seven months, and accepted instead the rating of the IME psychiatrist, who had examined claimant on only one occasion. The absence of explanation makes it impossible for this court to perform intelligent judicial review. It thus cannot be determined, pursuant to traditional standards of review, whether the JCC's acceptance of the IME physician's psychiatric PI rating is supported by CSE that accords with reason and logic.
The majority's modification of the CSE standard as approved by the Florida Supreme Court to its review of conflicting medical evidence in workers' compensation cases effectually overrules established supreme court precedent, and as such is clearly contrary to the court's admonishment in Hoffman v. Jones, 280 So.2d 431 (Fla.1973), and State v. Dwyer, 332 So.2d 333 (Fla.1976), cautioning that if district courts of appeal choose to call into question the continuing viability of a rule approved by that court, they may certify as a question of great public importance the wisdom of continued adherence to the rule, and state their reasons for advocating a change in the law, but they clearly have no authority of their own to reject the rule.

II.
I consider the majority's analysis of the issue relating to the JCC's preference of Dr. Rogachefsky's PI rating over that of other physicians to be even more flawed. Although I agree with the majority that the reasons the JCC gave for accepting the particular PI rating finds support in the record, the difficulty with the order is that without any explanation, the JCC approved not only the MMI date that served as the foundation for his selection of Dr. Rogachefsky's rating, but the conflicting date as well of the physician whose PI rating he rejected.
There is no rational explanation for the JCC's acceptance of two inconsistent MMI *1086 dates. Without offering any reason, the JCC stated that he adopted the opinion of Dr. Rogachefsky "indicating the Claimant's Maximum Medical Improvement date... to be February 4, 1998." In the following paragraph, however, again without elaboration, the JCC approved Dr. Dennis's medical opinion testimony "placing the Claimant at Maximum Medical Improvement... (after her last surgery of June 16, 1999) for her right hand condition on October 8, 1999."
As the record demonstrates, Dr. Dennis did not agree with Dr. Rogachefsky's MMI date of February 4, 1998, which the latter assigned before he performed his third and final surgery on claimant's injured hand. When Dr. Dennis first saw claimant on August 3, 1999, following Dr. Rogachefsky's last surgical procedure of June 16, 1999, Dr. Dennis opined that claimant's condition would benefit from occupational therapy and scar massage. On claimant's next visit of September 7, 1999, Dr. Dennis specifically reported that claimant was not yet at MMI, and he continued to treat the resulting nerve damage following the crush injury. It was only on October 8, 1999, that Dr. Dennis finally considered claimant to be at MMI, which the JCC also approved.
The rule is well established that the JCC cannot, as a matter of law, accept two conflicting MMI dates. MMI is defined as "the date after which further recovery from, or lasting improvement to, an injury or disease can no longer reasonably be anticipated, based upon reasonable medical probability." § 440.02(8), Fla. Stat. (1995). Although a case may warrant differing MMI dates for different conditions, such as physical versus psychiatric MMI, the law does not permit two MMI dates for the same condition under the circumstances present in this case. Hence, the JCC's acceptance of both MMI dates was an error of law, which requires the application of de novo review, not that of CSE. As a result, this court owes no deference to the JCC's conflicting findings, but may conduct its own independent de novo review.[6]See Philip J. Padovano, Florida Appellate Practice, § 9.4, at 128 (2001-02 ed.)
Similarly, a PI rating based upon a premature MMI date is legally erroneous. Section 440.02(19), Florida Statutes (1995), defines PI as "any anatomic or functional abnormality or loss determined as a percentage of the body as a whole, existing after the date of maximum medical improvement, which results from the injury." (Emphasis added.) Moreover, section 440.15(3)(a)(4), Florida Statutes (1995), provides that "[a]fter the employee has been certified by a doctor as having reached maximum medical improvement... the certifying doctor shall evaluate the condition of the employee and assign an impairment rating."
As the above statutory provisions make abundantly clear, a PI rating set before the date MMI is established is legally impermissible. Because we have no way of discerning from the order whether the orthopedic rating the JCC accepted was not premature, the finding must be reversed and the case remanded for further explication. See Anderson & Padgett Sawmill v. Collins, 686 So.2d 795 (Fla. 1st DCA 1997) (remanding for further findings because it was impossible to determine from the order, *1087 which both granted permanent total disability [PTD] benefits and authorized additional evaluation and treatment for a suspected condition, whether the treatment was remedial or palliative; and if remedial, the PTD award must be stricken, because the MMI date would be premature).
Even if the CSE standard could conceivably be said to apply to the JCC's acceptance of Dr. Rogachefsky's rating, the finding is clearly not supported by CSE, as defined by the Florida Supreme Court, because it does not accord with logic and reason. An order which does not comply with established legal principles because its findings are so internally inconsistent and/or lacking in rational explanation as to defy intelligent appellate review obviously frustrates the correct application of the standard. As stated, the JCC's acceptance of two conflicting MMI dates without any explanation cannot be said to establish a substantial basis of fact from which the fact at issue could be reasonably inferred.
The majority's use of the present case to recede not only from this court's established case law, but from controlling precedential authority of the Florida Supreme Court as well, is clear from the cursory mention of the facts at issue, buried in footnote 1 on page 1073 of its opinion. Also telling is its reliance on Rinker Materials Corp. v. Hill, 471 So.2d 119 (Fla. 1st DCA 1985), at page 1074-75.[7] The majority acknowledges in footnote 1 that the JCC approved two different MMI dates, but contends that appellant "does not make an issue of the facially inconsistent M.M.I. dates." I disagree. In challenging the JCC's unexplained acceptance of Dr. Rogachefsky's opinion in the face of overwhelming contrary evidence, claimant argues that there are two different MMI dates and Dr. Rogachefsky's PI rating was premature, and questions "whether a premature PI rating can be deemed competent evidence of a claimant's ultimate postsurgery orthopedic rating at MMI [given by a different physician] nearly a year later." Thus, claimant's argument directed to the JCC's preference of Dr. Rogachefsky's PI rating clearly encompasses the inconsistent MMI dates accepted by the JCC.
The majority's only attempt to analyze the basis for the JCC's acceptance of the two conflicting dates, set out under footnote 1, turns on speculation, in that no ground therefor exists in the record. Speculation, however, can hardly be said to be consistent with the principle of CSE. As the supreme court pointed out in Florida Rate Conference v. Florida Railroad & Public Utilities Commission, 108 So.2d 601, 607 (Fla.1959): "Surmise, conjecture or speculation have been held not to be substantial evidence." III.
In conclusion, the two issues relating to the JCC's acceptance of conflicting PI ratings should be reversed and remanded for further findings to enable this court to comply with its appellate review function, in accordance with standards approved by the Florida Supreme Court. The undiscriminating review procedure the majority now adopts undermines the integrity of the appellate process, because, without proper findings or explanations by the trial *1088 arbiter, this court's ability to determine the correctness of the decision will often be severely impaired. In my judgment, principled decision-making requires that this court continue to apply the standard the Florida Supreme Court adopted in Andrews and other pertinent case law to its review of conflicting medical evidence in workers' compensation appeals. The ultimate appellate determination of whether the JCC's findings conform with logic and reason should, in my estimation, be left to members of each individual panel, entrusted by Article V, section 4(a) of the Florida Constitution with decision-making responsibility, rather than by a broad rule of the full court mandating affirmance in all cases if the order is supported by any evidence in the record, regardless of whether the ruling took into consideration all of the evidence and accords with reason and logic.
BROWNING, J. concurring in part and dissenting in part.
I concur with the majority opinion, except as to part II of the dissent as it relates to the legal consequences of conflicting MMI dates with which I concur.
NOTES
[1] Appellant does not make an issue of the facially inconsistent M.M.I. dates. This discrepancy is more than likely explained by the fact that Dr. Rogachefsky's evidence of M.M.I. came before his June 15, 1999, surgery. Dr. Dennis' testimony took into account that surgery. Nevertheless, Dr. Dennis testified that claimant was essentially unchanged in the time that had passed since Dr. Rogachefsky's impairment rating. The dissent's suggestion that we should consider the unraised MMI issue as a question of law is illusory at best. Drs. Rogachefsky and Dennis both diagnosed the same conditions and did not disagree as to limitations. They differed only in the number rating assigned.
[2] Section 440.25(3)(b), Florida Statutes (1951), provided in pertinent part: "The order rejecting the claim or making the award (referred to in this chapter as a compensation order), together with a statement of the findings of fact and other matter pertinent to the questions at issue, shall be filed in the office of the commission at Tallahassee ...." (emphasis added).
[3] The competent substantial evidence rule, so familiar to the workers' compensation bar and bench, was stated in United States Casualty Co. v. Maryland Casualty Co., 55 So.2d 741, 745 (Fla.1951):

We are of the opinion the "substantial evidence" rule should be invoked in all cases. Even in cases which must be resolved upon a true appraisal of testimony of medical experts, the deputy commissioner's findings of facts should be upheld unless there is no competent, substantial evidence, which accords with logic and reason, to sustain them.
[4] Chapter 79-312, section 1, Laws of Florida, abolished the Industrial Relations Commission and transferred all appeals pending before the Commission to the First District Court of Appeal effective October 1, 1979, and provided that after September 30, 1979, review of any order of a deputy commissioner entered under chapter 440 would be by appeal to the First District Court of Appeal.
[5] See, e.g., Poorman v. Muncy & Bartle Painting, 433 So.2d 1371, 1373 (Fla. 1st DCA 1983) (characterizing as an exception to the Buro rule situations "where the reason for the finding in the order is not apparent from the record"); Curry v. Miami Dolphins Ltd., 522 So.2d 1010, 1012 (Fla. 1st DCA 1988) (purporting to apply Buro, Piper, Vargas, and Rosenfeld, but stating, "[w]hile it is apparent from the deputy's final order that he did not overlook or ignore the testimony of the other three physicians, it is not apparent from the record why the deputy accepted Dr. Tobin's testimony over the testimony of the other doctors"); Yeargin Constr. Co. v. Hutchinson, 547 So.2d 1269, 1271 (Fla. 1st DCA 1989) (same); H & A Frank's Constr. Co. v. Mendoza, 582 So.2d 780, 781-82 (Fla. 1st DCA 1991) (same).
[6] An appellate body's authority to apply the de novo standard has long been recognized in a wide variety of cases, and is not used exclusively in the examination of evidence in compensation cases. For example, the rule has been applied in, among other cases, appeals in probate, see Walton v. Estate of Walton, 601 So.2d 1266 (Fla. 3d DCA 1992), and those in marital dissolution, see Dukes v. Dukes, 346 So.2d 544 (Fla. 1st DCA 1976).
[7] In Rinker, this court refused to consider whether the deputy commissioner lacked CSE to rely on an expert's opinion that was based upon hearsay, because the employer/carrier had not objected to the hearsay below. The claimant at bar does not contend that part or all of Dr. Rogachefsky's or the IME psychiatrist's opinions were hearsay or otherwise inadmissible, but instead that the JCC's findings based upon such opinions do not accord with logic and reason. The majority's implication that a claimant who does not object to the admission of medical testimony at the trial level thereafter waives the right to challenge the sufficiency of such evidence on appeal has no legal support.